### In re ALI PROPERTIES, INC., MJB Motels, Inc., Debtors.

No. 03–10433.

United States Bankruptcy Court, D. Kansas.

Aug. 3, 2005.

Keith Miles Aurzada, Akin Gump Strauss et al., Dallas, TX, Robert W. Challquist, Kansas Department of Revenue, Topeka, KS, Collin Dietiker, Independence, MO, Brian L. Friedman, Proskauer Rose LLP, New York, NY, Herman L. Goldsmith, Proskauer Rose LLP, New York, NY, Sheldon I. Hirshon, Proskauer Rose LLP, New York, NY, James E. Kelley, Lewis, Rice & Fingersh, Kansas City, MO, Thomas M. Martin, Kansas City, MO, Rex C. McCall, Springfield, MO, Edward J. Nazar, Wichita, Sarah L. Newell, Wichita, Scott Rutsky, Proskauer Rose LLP, New York, NY, Lee J. Viorel, Lowther Johnson, Attorneys at Law, LLC, Springfield, MO, Samantha S. Ward, Missouri Dept of Revenue, Jefferson City, MO, for Creditors.

Lori O'Keefe Locke, Kansas City, MO, Jack C. Marvin, Wichita, Greta A. McMorris, Kansas City, MO, Mark A. Shaiken, Stinson Morrison Hecker LLP, Kansas City, MO, for Debtors.

***ORDER ON (1) APPLICATION TO ENTER FINAL DECREE; AND (2) MOTION TO CONSTRUE PLAN AS TO SUFFICIENCY OF CURE OF GROUND LEASE TAX DEFAULT***

ROBERT E. NUGENT, Chief Judge.

ALI Properties, Inc. and MJB Motels, L.L.C. (together, the "Reorganized Debt-

or") seek the entry of a final decree closing these bankruptcy cases as of June 30, 2003.[1] JoAnn Carlson and Richard J. Carlson as Co–Trustees of the Carlson Living Trust (the "Ground Lessor") object to that application and separately request the Court to determine that the Reorganized Debtor's provisions to cure the tax default under a ground lease violates the cure provisions of Section 6.1 of the confirmed plan.[2] The Reorganized Debtor has filed a detailed response to both of the Ground Lessor's pleadings. In addition, Criimi Mae Services Limited Partnership, the servicer of the principal secured creditor of the debtor, has filed a statement generally supporting the debtor's position in this matter.[3] At a hearing held May 12, 2005 on the debtor's Motion for Final Decree Closing Case, neither party offered live evidence, informing the Court that the issues were matters of law and interpretation. The Reorganized Debtor and the Ground Lessor submitted stipulated documentary evidence, including a copy of the Ground Lease, Lease Modification Agreements, and an Estoppel Agreement for the Court's review. The Court also takes judicial notice of the pleadings filed in both the ALI and MJB cases.[4] For the reasons set forth below, this Court concludes that the Ground Lessor's interpretation of the Plan's provisions is incorrect and that a final decree should issue forthwith.

*Factual Background*

These chapter 11 cases were filed on February 5, 2003, one on behalf of ALI and the other on behalf of MJB.[5] Among the parties in interest named on MJB's Schedule G were John A. Key and Josephine Key as lessors of the real estate located at 4141 Noland Road in Independence, Missouri. On October 1, 1965, Mr. and Mrs. Key leased the real estate upon which MJB now operates a motel to Delta Motor Hotel of Independence, Inc. for term of 49 years, the same to be renewable for five 10–year periods at lessee's option ("Ground Lease"). Lessee's exercise of this option is to be automatic. The base term of the Ground Lease will expire on September 30, 2014. Jo Ann Carlson and Richard J. Carlson as co-trustees of the Carlson Living Trust purport to be successors in interest to the Keys, a fact which Reorganized Debtor does not dispute.

Several lease terms are relevant to this controversy. First, Article 7.1 of the Ground Lease stipulates that the lessee will pay all taxes, assessments and impositions concerning the property. If the lessee fails to do so, the lessor "may" pay them and recover its expense from the lessee. Article 7.2 provides that the lessee may contest any such tax or imposition

1. Dkt. 391.

2. Dkt. 399 and 401.

3. Dkt. 411.

4. Both in pleadings and in argument, each party has made reference to an alleged visit to the premises by Ms. Carlson which was either (1) according to the Reorganized Debtor, a trespass by her that resulted in her arrest; or (2) according to the Ground Lessor, a false imprisonment of her. There are also references to communications between and among counsel for the respective parties concerning an alleged offer by the Carlsons to purchase the motel and an offer by Criimi Mae to permit the payment of the taxes immediately in exchange for the Carlsons' waiver of their claims made here. Diverting as these accounts are, the Court lacks any admissible testamentary or documentary evidence of these events and has striven to disregard them in its analysis of the legal issues presented today.

5. The same day, debtors moved for joint administrations of the ALI case (Case No. 03–10433) and the MJB case (Case No. 03–10434) and the Court granted the same. Dkt. 14.

and that the lessor may *not* pay such taxes under protest until such time as the tax contest is finally decided. Failure to pay these taxes as they come due is, not unexpectedly, an event of default under the lease. Article 32.1(c) states that in the event of any failure by the lessee to abide by any covenant, the lessor may take any action to enforce the terms of the lease or take possession of the premises.

This Ground Lease has been twice modified, once on July 1, 1967 and once on November 15, 1982, but the modifications do not relate to the issue at hand. More important is the February 2, 1996 Estoppel, Consent and Agreement ("Estoppel") executed by the Keys and MJB for the benefit of Nomura Asset Capital Corporation, Criimi Mae's predecessor in interest, in which the Keys consented to Nomura's mortgage and agreed not to cancel the Ground Lease without Nomura's written consent. Moreover, the Keys agreed to give notice of any material default to Nomura and stipulated that Nomura could cure such defaults. Notice of lease termination was to be given to Nomura and, if the underlying default were monetary, in nature, Nomura was given 30 days to cure. If the default were non-monetary, the cure period was 60 days. These default periods could be extended for six months by Nomura's payment of the lease rentals during that period.

On Schedule E, MJB disclosed sizeable obligations to Jackson County, Missouri for defaulted real estate taxes for the year ending December 31, 2002. Jackson County filed a proof of claim for taxes on the Independence property in the amount of $73,413.84. This and the other priority tax claims were to be paid their pro rata share of $50,000 to be distributed on the effective date of the plan with the balance to be paid over six annual payments. At argument, counsel suggested that the amount remaining due was inexcess of $60,000. The existence and allowance of this claim evidences a significant pre-petition default.

On the date these cases were filed, MJB moved for and was granted an extension of time in which to assume or reject its executory contracts or unexpired leases.[6] Several more extensions were granted, all without any objection or other pleading being filed by the Ground Lessor.[7] On May 14, 2004, this Court entered an eighth extension order extending the time in which to assume or reject until the effective date of the confirmation of debtor's plan.[8]

The Reorganized Debtor's First Amended Plan dated June 25, 2004 was filed on or about July 8, 2004 ("Plan").[9] Pursuant to Article 6.1(a) the Reorganized Debtor assumed all unexpired leases that were not previously rejected and were not listed in a schedule to be provided to parties prior to

6. Dkt. 8, 19.

7. *See* Dkt. 141, 196, 224, 253, 283, 335, and 352. This Court generally enters such extension orders without a hearing. 11 U.S.C. § 365(d)(4) provides that the Court may, for cause, extend the 60–day period given to assume or reject an unexpired lease of non-residential real property. The necessity of "notice and a hearing" is omitted from that sub-section, but lessors may, at all times, seek a court order that the trustee or debtor be required to act. *See* Fed. R. Bankr.P. 6006(b). The Ground Lessor was silent in

these proceedings until filing its opposition to the final decree.

8. Dkt. 352. As contemplated by Fed. R. Bankr.P. 6006(a), the Reorganized Debtor's assumption or rejection of unexpired leases may be made as part of the plan of reorganization, rather than by motion. Article VI of the First Amended Plan contains such a provision.

9. Dkt. 364.

confirmation hearing. The Plan provided at Article 6.1(e) that any undisputed defaults of leases to be assumed would be cured within 120 days of the effective date of the plan while disputed defaults would cured within 120 days of the entry of an order determining the amount of the debtor's liability thereon. It is this provision upon which Ground Lessor relies, asserting that the entire tax claim had to be paid within 120 days or the newly-assumed lease would be in default and subject to termination.[10]

The Plan also provided at Article 4.4 that unsecured priority tax claims would be paid in six equal annual installments plus interest. Debtor responds that this provision operates as the cure itself and that Ground Lessor, having failed to participate in this case at all up to now is merely trying to take advantage of this "default" to extricate itself from a lease agreement it deems unfavorable to its interests.

After what were portrayed to this Court as substantial negotiations between Reorganized Debtor and Criimi Mae, the Court entered an Order confirming the Plan on December 17, 2004 after approving the Disclosure Statement on July 12, 2004.[11] Thereafter, Debtor substantially consummated the Plan and sought the entry of a

final decree on April 15, 2005.[12] The Ground Lessor's motion for an interpretation of the Plan terms followed, along with its objection to the final decree application. The Court has carefully reviewed the lease documents, the Plan, and the parties' papers and has had the benefit of oral argument.

*Ground Lessor's Motion for a Ruling Concerning Default*

▇ The Ground Lessor asks this Court to rule that the Reorganized Debtor was required to pay the defaulted Jackson County taxes in full within 120 days of the effective date of the Plan and that the Reorganized Debtor's failure to do so results in an enforceable default under the Ground Lease. In oral argument, the Ground Lessor conceded that the Ground Lease was assumed at confirmation, but that the requisite cure of the tax default did not occur within the 120 days allotted in the Plan. In response to the Reorganized Debtor's argument that the confirmed six-year payout of the taxes is the cure, the Ground Lessor states that a six-year cure is not the "prompt" cure provided for in 11 U.S.C. § 365(b)(1)(A).[13]

This Court has entered a final order confirming the Plan in this case.[14] In the Plan, debtors proposed to assume the Ground Lease and effectuate a cure of any

---

**10.** Well after the ten day period that the Court set for filing stipulated documents and for Criimi Mae to file its response to the Ground Lessor's Motion, the Reorganized Debtor filed a Second Supplement to its Response to the Ground Lessor's Motion, Dkt. 413, in which the Reorganized Debtor raised the possibility that Criimi Mae might authorize debtor to pay the Jackson County taxes under certain conditions. In its earlier-filed Supplement to its Response, the Reorganized Debtor raised the issue of whether the default asserted by the Ground Lessor is "disputed" or "undisputed." If the tax payments are being made, and there is no evidence one way or the other, there is no default and this Court need not visit the "disputed" versus "non-disputed" ar-

gument until such time as a default is specified.

**11.** Dkt. 380. The last day to object to confirmation of the plan was set for August 6, 2004. *See* Dkt. 365. The Ground Lessor did not object to confirmation.

**12.** Dkt. 391.

**13.** All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise noted.

**14.** Dkt. 380.

outstanding lease defaults within 120 days of the effective date of the Plan. The debtors further proposed to satisfy their obligation (and the Ground Lessor's obligation) to Jackson County for real estate tax by payment of the County's priority tax claim in six annual installments with interest (after application of the pro rata share of the $50,000 first payment). Jackson County did not object to this treatment and is bound by the terms of the confirmed Plan.

Had the Ground Lessor filed a timely objection to confirmation, this Court would have had to determine whether the proposed assumption scheme passed muster under § 365(a)(1). The debtors would have been required to show either that they had cured the default or give adequate assurance that they could do so promptly. In addition, the debtors would have had to compensate the Ground Lessor for any monetary loss caused by their default and adequately assure the Ground Lessor of their future ability to perform under the lease. Had an objection been filed by the Ground Lessor, the "promptness" of the six-year cure might have been troubling. As William Norton in his treatise puts it, "[a] 'prompt' cure should mean prompt." [15] Cures extending over a period of years are generally disfavored and, as

the Ground Lessor points out, four and five year cures are rarely approved. [16]

But here, the Ground Lessor failed to object to confirmation. [17] Indeed, the Court notes that movant has, heretofore, been "missing in action" for the nearly two and a half years that this case has been pending. Other than its counsel's entering an appearance here on March 5, 2003, [18] and an additional entry of appearance on May 3, 2005, [19] Ground Lessor filed no pleadings and took no part in this case. The Court is satisfied that Ground Lessor was given appropriate notice of all proceedings, especially those most related to the issues at hand in this matter: the Plan and Disclosure Statement.

■■■ As is noted in *In re Cellnet Data Systems, Inc.*, the non-bankrupt party to an unexpired lease or executory contract "bears [the] burden to assert any defaults prior to the assumption." [20] Res judicata bars that party's later assertion of a claim based upon a pre-petition breach. As the *Cellnet* court stated,

> When a bankruptcy court approves the assumption of an executory contract, it necessarily finds that no uncured defaults exist. *In Re Lykes Bros. Steamship Co.*, 221 B.R. 881, 883 (Bankr. M.D.Fla.1997) ("If prior to the assumption of any executory contract there is

---

**15.** William L. Norton, Jr., 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 39:29, p. 39–93 (2004 West).

**16.** *See e.g., In re R/P Intern. Technologies, Inc.*, 57 B.R. 869 (Bankr.S.D.Ohio 1985) (cure of $156,000 rent default over five years, with 10% interest, was not prompt, particularly where the cure period is virtually co-extensive with the remaining life of the lease); *In re Liggins*, 145 B.R. 227 (Bankr.E.D.Va.1992) (cure over four years is not prompt cure); *In re Uniq Shoes Corp.*, 316 B.R. 748 (Bankr. S.D.Fla.2004) (proposal to cure over a 48–month period is not prompt). *Cf. In re Valley View Shopping Center, L.P.*, 260 B.R. 10

(Bankr.D.Kan.2001) (cure over 2–year period, with interest at the contract rate, was allowed where 22 years remained on lease term)

**17.** *See* 11 U.S.C. § 1141 for the effect of confirmation of the Plan.

**18.** Dkt. 80. In the notice of appearance, the Ground Lessor requested a copy of any proposed plan filed in the case.

**19.** Dkt. 398.

**20.** 313 B.R. 604, 608 (Bankr.D.Del.2004), *quoting In re Diamond Mfg. Co.*, 164 B.R. 189, 199 (Bankr.S.D.Ga.1994).

no allegation of any existing default, the order approving the contract determines that no default exists."); *In re Diamond Mfg. Co.*, 164 B.R. 189, 197 (Bankr. S.D.Ga.1994); *NCL Corp. v. Lone Star Bldg. Centers (Eastern), Inc.*, 144 B.R. 170, 179 (S.D.Fla.1992). Thus, "[t]he nonbankrupt party [to an executory contract] bears [the] burden to assert any defaults prior to the assumption." *In re Diamond Mfg. Co.*, 164 B.R. at 199. Where the nonbankrupt party has knowledge of facts sufficient to place the party on notice that a "potential" preconfirmation breach has occurred, res judicata bars that party from later asserting a claim based upon the pre-petition breach. *Id.* at 201.[21]

When this Court confirmed Reorganized Debtor's Plan, it blessed the assumption of this lease and made an implicit finding that the lease had been cured by the tax claim payment provision. The Ground Lessor now seeks to litigate a claim it could have made, but failed to make in the first instance. Res judicata precludes that.[22] Bankruptcy courts generally take a dim view of parties in interest who, for tactical or opportunistic reasons, "lay in the weeds" through confirmation only to emerge later and bedevil previously confirmed plans. This Court is no different. There is no question that Ground Lessor had the requisite notice and opportunity to be heard on the issues it now raises: that the proposed cure was not a "prompt cure" or was otherwise insufficient. Having ducked that opportunity, it cannot now resurrect an issue as to which this Court's confirmation order is res judicata.[23]

Even if the res judicata effect of the confirmation order did not resolve the motion, the plain meaning of the Plan, taken in the context of the lease's terms and those of the Estoppel, would. The Ground Lessor complains that the cure is of exorbitant length, but has shown no prejudice. In fact, the Court could view the Reorganized Debtor's undertaking to repay the defaulted taxes over six years with interest as an internal refinancing of those obligations. Rather than borrow the amount of the taxes from a third-party lender on a six-year note, the Reorganized Debtor has agreed to repay the taxes to Jackson County on the same basis. If the debtor had refinanced the taxes through a third-party loan, Ground Lessor would have had no standing to argue about a hypothetical six-year payout of that note. Had the Ground Lessor paid the defaulted taxes and sought repayment from the Reorganized Debtor as a condition of cure, and had the debtor proposed to repay the Ground Lessor over six years, the Court might have taken take a different and more restrictive view of whether the cure

---

21. 313 B.R. at 608–609.

22. The elements of res judicata are: a final judgment on the merits in the prior action; an identity between claims raised in the prior and subsequent action; and an identity or privity of parties. *In re InteliQuest Media Corp.*, 326 B.R. 825, 829–31 (10th Cir. BAP 2005). All of these elements are present here.

23. *See Stoll v. Gottlieb*, 305 U.S. 165, 170–171, 59 S.Ct. 134, 83 L.Ed. 104 (1938) (Matters covered by plan of reorganization confirmed by final order of a bankruptcy court are subject to the doctrine of res judicata.);

*Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir.2000) (Essential to application of res judicata is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation.); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987) (An action to enforce a guaranty released by the confirmed plan of reorganization was barred by the doctrine of res judicata); *In re Barton Industries, Inc.*, 159 B.R. 954 (Bankr.W.D.Okla.1993) (IRS precluded by res judicata from litigating lien priority following confirmed plan of reorganization.).

**462**

period is reasonable. The Court recognizes that in the present scenario, the Ground Lessor is at risk of ongoing accrual of interest and penalties should the Reorganized Debtor fail to complete the six-year payout under the Plan, but the Ground Lessor's silence during the confirmation process left it open to that risk. Moreover, if the Reorganized Debtor defaults in the six-year payout, that would represent a default on its obligation to pay taxes under the Ground Lease, exposing the Reorganized Debtor to the Ground Lessor's cancellation of the lease. In short, the Court considers that the proposed six-year payout of the Jackson County obligation which Jackson County has accepted and to which it is bound *is* the cure contemplated by Article 6 of the Plan and that it occurred well within the prescribed 120 day deadline.

Finally, the plain terms of the Ground Lease contemplate that the lessee not only be required to pay the taxes as they come due, but also empower the lessee to contest the taxes without interference from the lessor. Here, the lessee has utilized its rights in Chapter 11 to redefine its payment obligations to the Ground Lessor and to the county, again without an objection (or even a comment) from either party. Further, as Criimi Mae points out, the Ground Lessor has subordinated its interests to those of the lender and agreed to give the lender an opportunity to cure any monetary defaults arising under the lease. Even if the Ground Lessor were to prevail here, it would still be bound by the provisions of the Estoppel to allow Criimi Mae to attempt a cure. And, had the Ground Lessor meaningfully participated in this case prior to confirmation, Criimi Mae and the debtors could have made appropriate provisions to relieve the Ground Lessor's current perceived distress.

The Ground Lessor's Motion (Dkt.399) is DENIED.

*Final Decree*

█ In concluding that the Reorganized Debtor has cured the default of the Ground Lease in accordance with the Plan as confirmed, there is no reason why a final decree cannot be entered and this case closed. The Ground Lessor's objection to the entry of a decree essentially restates its motion for a plan interpretation that the Court has declined to make. The Ground Lessor has not contested the assertion that the estate has been fully administered. The confirmation order is final. There were no deposits required under the Plan. The Reorganized Debtor has assumed the business or management of the property in question. Payments have commenced, all contested matters have been resolved, and all fees due under 28 U.S.C. § 1930 have been paid. Thus, § 350(a) and Fed. R. Bankr.P. 3022 require this Court to enter a final decree closing this case.

The Reorganized Debtor's Application for a Final Decree (Dkt.391) is GRANTED and the Reorganized Debtor shall upload a proposed Final Decree for entry by the Court.

IT IS SO ORDERED.