### In re Marlin HATHAWAY, Debtor.

### No. 08–15708.

United States Bankruptcy Court,
W.D. Washington.

March 24, 2009.

Christopher F. Dale, J. Todd Tracy, Attorneys at Law, Crocker Kuno PLLC, Seattle, WA, for debtor.

Brian H. Krikorian, Attorney at Law, Seattle, WA, for Ohana Group, LLC.

K. Michael Fitzgerald, Seattle, WA, Chapter 13 Trustee.

## DECISION AND ORDER ON MOTION TO DETERMINE STATUS OF SECURITY DEPOSIT

PHILIP H. BRANDT, Bankruptcy Judge.

Before the court is the Motion to Determine Status of [Debtor] Marlin Hatha-

way's Security Deposit (docket no. 31), ("Motion"). Having set the cure amount in the order approving assumption and assignment of the lease, I conclude that claim preclusion is available and should be applied; the result is that nobody wins in this round.

### I. FACTS

Debtor Marlin Hathaway and his limited liability company, Asteroid Café LLC ("LLC"), were joint tenants under a retail lease for real property located in Seattle's Fremont neighborhood, a/k/a the Center of the Universe. Ohana Group LLC is the lessor, and the LLC operated Asteroid Café on the premises. The tenants posted a security deposit of $10,000 when the lease was signed. The lease, an exhibit to Debtor's declaration in support of the motion to assume and assign it (docket no. 14), simply states the amount of the security deposit in the "Basic Lease Provisions." There are no provisions respecting its application.

Debtor filed his chapter 13 [1] petition on 4 September 2008. He moved to assume and assign the lease as part of a sale of the business;[2] Ohana objected. The parties negotiated an agreed order setting the cure amount at $25,737.60; the assumption and assignment was approved by order entered 27 October 2008, (docket no. 29) (the "Order"). The sale of the café closed 14 November 2008.

Just prior to closing, Ohana informed escrow that the security deposit had been applied to various obligations totaling $21,964.65:

1. Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23.

"RCW" refers to the Revised Code of Washington.

2. The sale did not require court approval, as the seller was the LLC.

(a) attorney's fees of $8,520.79;

(b) April and May 2006—construction work: $4,177.29;

(c) 22 January 2007—door installation: $2,139; and

(d) 28 March 2007—removal of grease clog: $680;

(e) 21 June 2007—service on vented hood: $156.67; and

(f) June 2007—grease trap installation: $6,290.90.

To avoid delaying the transaction, the buyer deposited an additional $10,000 into escrow, and the sale closed, with escrow holding those funds pending resolution of the issue. The agreed cure amount was paid to Ohana.

Debtor filed the Motion, arguing that the security deposit should have been accounted for in negotiating the cure, and that the Order bars relitigation under the doctrine of res judicata. He says neither he nor Asteroid received any notice of the charges until just before closing.

On initially hearing the motion, I requested additional briefing. Ohana submitted the declaration of Daniel Cawdrey, its principal, which indicates that Debtor was told of the charges around the time they were incurred, and that he had stated he lacked cash flow to pay them. Debtor disputes these assertions. At argument, Ohana's counsel acknowledged that there is no ledger or other itemization of the application of the deposit.

Debtor sought, in his Motion, that his security deposit be transferred to the purchaser—perhaps the motion was drafted before the agreement to facilitate closing was reached. At argument, he asked for "refund" of the funds in escrow.

## II. JURISDICTION

This is a core proceeding within this court's jurisdiction. 28 U.S.C. § 1334(a) and (b), and 157(a) and (b)(2)(A) and (O); General Rule 7, ¶ 1.01, Local Rules, W.D. Washington.

## III. ISSUE

Whether entry of the order setting the cure amount bars Ohana from asserting that the security deposit had previously been exhausted.

While the facts suggest a possible violation of the automatic stay, § 362(a), or a preference, § 547, because the timing of the landlord's application of the deposit is not clear, those questions are not raised by the Motion.

## III. DISCUSSION

Although the parties refer to "res judicata" in their arguments, the Supreme Court has adopted the terminology of the *Restatement (Second) of Judgments:* "claim preclusion" and "issue preclusion" in place of "res judicata" and "collateral estoppel." *In re George,* 318 B.R. 729, 733 (9th Cir. BAP 2004), *aff'd,* 144 Fed.Appx. 636 (9th Cir.2005), (citing *New Hampshire v. Maine,* 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). Those terms are used hereafter.

Debtor argues that because Ohana did not account for the application of the security deposit in calculating the cure amount, which was approved in the Order, Ohana is barred from asserting any right to the deposit.

Claim preclusion operates to bar a legal theory that has never been litigated by the parties, but could and should have been in a prior proceeding:

Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Claim preclusion prevents litiga-

tion of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

*Robi v. Five Platters, Inc.,* 838 F.2d 318, 321–22 (9th Cir.1988) (citations and footnote omitted). When there has been a final judgment on a part of a "claim," the right to obtain remedies respecting that claim is extinguished. *George,* 318 B.R. at 735–36; Christopher M. Klein et al., *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 Am. Bankr.L.J. 839, 847–51 (2005) ("Klein et al., *Principles*").

▋ For purposes of claim preclusion, consent judgments generally are final judgments on the merits, *Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000), although they may not be issue preclusive. *See Inouye v. Kemna,* 504 F.3d 705, 709 n. 3 (9th Cir. 2007) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 (9th Cir.2006) and *Providence Health Plan v. McDowell,* 385 F.3d 1168, 1174 (9th Cir. 2004)). In the context of a contested matter, the stipulated Order is the equivalent of a consent judgment.

▋ Under Federal law:

[c]laim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or

cause of action was involved in both suits.

*Rein v. Providian Financial Corp.,* 270 F.3d 895, 899 (9th Cir.2001) (citations omitted). The proponent of preclusion bears the burden of proof. *George,* 318 B.R. at 737. If claim preclusion is available, its application is discretionary. *Robi,* 838 F.2d at 321.

There is no dispute here that the same parties are involved, or that the judgment was rendered by a court of competent jurisdiction. But Ohana contends that the Order was not final, that the tenants' defaults were non-monetary and thus beyond the scope of cure, and, in its supplemental brief, that the security deposit issue does not involve the same claim or cause of action as cure of the lease defaults.

### A. *Finality*

A motion to assume and assign an executory contract or unexpired lease under § 365 is a contested matter governed by Rule 9014, Rule 6006(b),[3] and most of the rules applicable to adversary proceedings apply, including Rule 7054, regarding judgments.[4]

▋ A bankruptcy court order entered pursuant to § 365(a)[5] authorizing assumption and assignment of a lease is a final order and enforceable according to its terms. As the Ninth Circuit Bankruptcy Appellate Panel held in *In re Peaches Records and Tapes, Inc.,* 51 B.R. 583, 587 (9th Cir. BAP 1985):

**3.** Which provides:
A proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014.

**4.** Rule 9014(c) provides, in relevant part:
Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017,

7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071 . . . .

**5.** Which provides, with exceptions not here pertinent:
[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Although certain acts remained to be performed by the parties after the entry of the lower court's order, no additional adjudication of rights and duties was necessary. The court was left only to enforce its order in accordance with its specific terms.... [The assumption and assignment order] finally and fully determined the rights of [the] parties....

In the analogous context of judicial sales in bankruptcy, the policy underlying this rule is to promote stability. See *In re Met–L–Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir.1988) (under § 363(m), reversal on appeal of an order authorizing or confirming a sale will not affect the sale's validity if the buyer was acting in good faith and the sale was not stayed pending appeal; this provision expresses a highly relevant concern with the importance of finality in judicial sales in bankruptcy). *See also Winget v. J.P. Morgan Chase Bank*, 537 F.3d 565, 579 (6th Cir.2008), *cert. denied*, 77 USLW 3442 (2009) ("A sale order signals an end to litigation in a bankruptcy proceeding.... If sale orders were not final, parties could continue to litigate issues regarding the assets long after their sale, which is certainly an outcome worth prohibiting.").

The same is true with respect to assumption and assignment:

> There is a nexus between § 363 and § 365.... Even though assignments of executory contracts are governed by § 365 and not by the more general § 363 sales provision, assignments are in fact just a type of sale. Instead of purchasing or leasing property, [in] transactions governed by § 363, an assignee purchases a lease. A good faith assignee[ ] therefore stands in the same shoes as a good faith purchaser and as an innocent third party depends on the finality of bankruptcy orders to the same extent as good faith purchaser.

*Cinicola v. Scharffenberger*, 248 F.3d 110, 123–26 (3d Cir.2001). *See also In re Stadium Management Corp.*, 895 F.2d 845, 848–49 (1st Cir.1990) (applying § 363(m) to dismiss as moot appeals of order authorizing assumption and assignment of sublease as well as sale order, as sublease was integral to the asset sale).

Ohana reasons that the Order was not final because it did not make any final determination of pre-petition non-monetary lease defaults, and because the Order was contingent upon the sale being consummated and escrow being closed. The latter contention is foreclosed by the authorizing law regarding finality—while a failure of the transaction might render the Order moot, or give rise to claims for damages, no further judicial action respecting the Order was necessary. *Peaches Records*, 51 B.R. at 587. The former goes to the element of whether the same claim or cause of action was involved in the two matters.

### B. *Same Claim or Cause of Action*

The Restatement analysis focuses on transactions:

> What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Restatement (Second) of Judgments* § 24(2).

Factors to be considered in determining whether the same claim or cause of action is involved in both proceedings are:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

(3) whether the two suits involve infringement of the same right; and

(4) whether the two suits arise out of the same transaction or nucleus of facts.

*Rein*, 270 F.3d at 903 (citation omitted). Federal courts pragmatically apply the transactional test to determine what is a single "claim" for purposes of preclusion. *George*, 318 B.R. at 735.

■■■■ Debtor argues that because defaults must be cured[6] for a lease to be assumed, entry of the Order was necessarily a finding that no uncured default existed. *In re Diamond Mfg. Co.*, 164 B.R. 189, 198 (Bankr.S.D.Ga.1994). The non-bankruptcy party to the lease has the burden to assert any defaults prior to assignment. *In re ALI Props., Inc.*, 334 B.R. 455, 460–461 (Bankr.D.Kan.2005). When that party has knowledge of facts sufficient to give the party notice of a pre-petition claim prior to assumption, claim preclusion bars that party's later assertion of a claim based upon a pre-petition breach. *Id.* at 460. And, as noted above, preclusion bars defenses as well as claims.

Although Ohana actively negotiated the cure amount, it did not mention the application of the deposit or that the amounts to which the deposit was purportedly applied exceeded the deposit amount, even before attorney's fees. Debtor points out that the lease contains no provision authorizing the deduction of unpaid rent or expenses from the security deposit during the term of the lease and argues that all of the referenced charges should have been included in the cure statement.

■■■■ Ohana's initial position was that the charges were due to non-monetary defaults and thus were not required to be included in the cure amount. Ohana never explained how the defaults at issue were either nonmonetary or incurable. It characterized the breach as a failure to reimburse, has calculated the monetary amounts due, and has provided no authority for its assertion that this type of breach is not required to be cured prior to assumption. In any event, it abandoned the contention in its post-argument briefing, presumably after having considered *In re Claremont Acquisition Corp., Inc.*, 113 F.3d 1029 (9th Cir.1997), which held that an earlier version of the statute precluded cure of a "going dark" provision. Congress legislatively overruled *Claremont Acquisition* in enacting the current version of the section: Section 365(b)(1)(A) now requires all monetary defaults to be cured prior to assumption of an executory contract, but excepts incurable nonmonetary defaults, such as breach of a continuous

---

**6.** Section 365(b)(1)(A) provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph[.]

operation clause in a real property lease. See Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 365.05[3][c] (15th ed. rev.).

■ Ohana next asserts that the security deposit was applied pre-petition to expenses for which it was entitled to be reimbursed, and argues that it was not required to account for these items when the lease cure was negotiated. It contends that in a non-residential lease under Washington law the tenant's security deposit is held by the landlord on the tenant's behalf until the tenant breaches, at which time the landlord may appropriate the amount that will compensate for tenant's breach, citing *Exeter Co. v. Holland Corp.*, 172 Wash. 323, 20 P.2d 1, 23 P.2d 864 (1933) (landlord has a lien against the deposit), and *In re AB Liquidating Corp.*, 416 F.3d 961 (9th Cir.2005) (landlord's claim for lease rejection damages must be reduced by amount of security deposit in landlord's possession). But there is no general rule in Washington that a landlord under a nonresidential lease has a security interest in a such deposits: a nonresidential landlord's right to offset its damages against a security deposit is governed by the lease terms. See William B. Stoebuck, *The Law between Landlord and Tenant in Washington*, 49 Wash. L.Rev. 291 and 1013, 1029–1032 (1974); and William B. Stoebuck & John W. Weaver, 17 *Washington Practice Real Estate* § 6.53 (2d ed.2004) (describing types of security deposits recognized under Washington law).

*Exeter* involved a lease which provided for a lien on the security deposit, and does not stand for a general rule that there is a lien in a commercial lease, or that one is created upon a commercial tenant's breach. *AB Liquidating* dealt with the calculation of a landlord's claim for lease rejection damages; specifically, whether the security deposit should be deducted from amounts due before applying the landlord's cap. The case does not address the question of whether a security deposit purportedly exhausted during the lease term must be accounted for when calculating the cure amount for assumption and assignment.

That said, Debtor does not dispute that as a general proposition a security deposit may under some circumstances be applied to offset charges such as those itemized by Ohana. *See, e.g., In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 683–84 (Bankr.E.D.Pa.1990). While Debtor disagrees that some of the charges were his responsibility, I need not decide that: the pertinent question here is whether the Debtor was entitled to notice of the application of the deposit. Again, there is no dispositive Washington law in the commercial setting.

In the absence of any controlling law or agreement, and without specific notice of the application of the security deposit, Debtor could believe when negotiating the cure that it was still being held by Ohana. Given that the parties were moving toward termination of their relationship, one could reasonably expect an accounting of the security deposit in that negotiation. Nor is there any evidence that a security deposit was requested as part of the assumption-assignment until the issue arose at closing, which arguably supports Debtor's proclaimed belief that the security deposit he had provided was still intact. Conversely, that he did not query the status of the deposit during the negotiation may indicate that he at least suspected there was nothing left of the deposit.

■■ The transactional test for claim preclusion is many-faceted, and to be applied pragmatically. I am to consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether

their treatment as a unit conforms to the parties' expectations. *Restatement (Second) of Judgments* § 24(2). Considering these factors, I conclude that claim preclusion may be applied in this instance. The existence of a security deposit, or defaults which could be charged against it, or a default in not having funds on deposit, are certainly defaults within the ambit of cure under § 365(b)(1)(A), and the Order resolved the cure amount. If applied, claim preclusion would bar Ohana from asserting any uncured defaults, or any liability based on such defaults.

## C. *Discretion*

■■■ Where claim preclusion is available:

> [a] measure of intuition and discretion, to be sure, is required in administering the law of res judicata, as the rules in this Restatement frankly acknowledge.

*Restatement (Second) of Judgments*, ch. 1, Introduction, d (1982); *see also* Klein et al., *Principles*, at 867–868. In determining whether to apply the doctrine, I must consider the policies of protecting litigants from the burden of relitigating identical issues with the same parties and of promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■■■ Both of these concerns point toward application of preclusion—the nature and magnitude of any extant monetary defaults are central to the cure question, as is the existence of any fund to cover defaults. So, too, are the factual issues regarding what the parties might have agreed about the existence or application of the deposit, notice, waiver, oral modification of the lease, and the legal implications of their conduct, including estoppel. Had these matters been addressed in the cure negotiations, there would have been

no need for last-minute recalibration with its attendant attorney fees. And the purchaser of the café would not have been confronted with an extra $10,000 expense in a $93,000 transaction.

The major countervailing consideration is the latter fact. The $10,000 here at issue came from the purchaser who assumed the lease. But he is not in this fight, and his interests do not affect the determination of the rights between these parties in the context of the present motion.

So I will apply claim preclusion to bar Ohana's assertion of the existence of any uncured defaults of Debtor or Asteroid Café, LLC. But the doctrine also bars Debtor's assertion that there remains a security deposit:

> Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that was previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

*In re Cogliano*, 355 B.R. 792, 802 (9th Cir. BAP 2006), *quoting Robi*, 838 F.2d at 321–322. And a final judgment on a claim extinguishes any right to obtain remedies on that claim. *In re Summerville*, 361 B.R. 133, 142 (9th Cir. BAP 2007), *citing In re George*, 318 B.R. at 735–37 (additional citation omitted).

As Debtor has articulated no other basis for the relief he seeks, he has not established that he or the assignee of the lease is entitled to the funds held in escrow.

## IV. CONCLUSION AND ORDER

As Debtor requests, claim preclusion applies, but his victory is Pyrrhic—it bars

the relief he requests as well as the defense his landlord raises. And it is not at all clear that Ohana should not ultimately prevail. Although a landlord in Ohana's position can and should insist on the setting of a new security deposit in the order assigning the lease, as permitted in § 365(l),[7] the failure to do so here may be "no harm, no foul."

The Debtor's Motion is **DENIED**; after 10 days Ohana shall submit an order directing escrow to release the security deposit funds to it, unless within that time a party in interest files a new motion invoking a different theory for entitlement to the funds, and notes it for prompt hearing.

7. Which provides:

If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.