In re **ARRIVA PHARMACEUTICALS, INC.**, a California Corporation, Reorganized Debtor.

Arriva Pharmaceuticals, Inc., a California Corporation, Plaintiff,

v.

John Lezdey, an individual, J.L. Technology, L.P., a Nevada limited partnership, and Jamie Holding Company, LLC, a Florida limited liability company, Defendants.

Bankruptcy No. 07–42767 EDJ.
Adversary No. 09–04573 AJ.

United States Bankruptcy Court, N.D. California.

April 26, 2011.

Michael H. Ahrens, Michael Lauter, Ori Katz, Sheppard, Mullin, Richter And Hampton, San Francisco, CA, for Plaintiff.

## DECISION

EDWARD D. JELLEN, Bankruptcy Judge.

Plaintiff Arriva Pharmaceuticals, Inc., the above reorganized debtor ("Arriva"), has moved for summary judgment on its fourth claim for relief in this adversary proceeding against defendants John Lezdey ("Lezdey"), J.L. Technology L.P., and

Jamie Holding Company, LLC.[1] (The defendants herein are jointly hereinafter referred to as the "Lezdey Parties.") The court will grant Arriva's motion.

### A. Background

This adversary proceeding is the latest installment of a dispute in which the litigation has spanned both the continent and three different decades. At the core of the dispute is a License Agreement (the "Protease License") dated April 16, 1998 between Protease Sciences, Inc., as the licensor ("PSI"), and Arriva, then known as AlphaOne Pharmaceuticals, Inc., as the licensee. By the Protease License, PSI granted Arriva an exclusive license of certain patents for drugs to treat respiratory diseases.

Following execution of the Protease License, Lezdey and several entities that Lezdey and members of his family controlled claimed that the Protease License was invalid, whereupon a series of lawsuits began, all of which ultimately affirmed the validity of the Protease License.[2]

On August 29, 2007, Arriva filed a voluntary petition herein under chapter 11 of the Bankruptcy Code. On September 13, 2007, Arriva filed the required bankruptcy schedules and statements, including Schedule G (Executory Contracts), which listed the Protease License as one of the executory contracts to which Arriva was a party at the date of its chapter 11 petition.

On December 12, 2007, Arriva filed its Fourth Amended Chapter 11 Plan of Reorganization (the "Plan"). Paragraph 8.1 of the Plan provided for Arriva to assume the

---

1. The remaining claims for relief herein have been resolved by a stipulation of the parties that has been approved by this court.

2. The parties hereto and various related entities have been engaged in litigation in Arizona State court, Nevada State court, district courts in Florida and San Francisco, the Eleventh Circuit Court of Appeals, and this court.

Protease License. See Bankruptcy Code §§ 365(a) and 1123(b)(2).[3]

By order entered January 30, 2008 (the "Confirmation Order"), this court confirmed Arriva's Plan. The Confirmation Order is final.[4] Under the terms of the Plan and the Confirmation Order, the Plan went into effect on February 13, 2008, on which date Arriva's assumption of the Protease License became effective.

Thereafter, on September 3, 2009, the Lezdey Parties filed a complaint, subsequently amended, in Washoe County, Nevada against Arriva and numerous other parties alleging Arriva's breach of the Protease License. (This action is hereinafter referred to as the "New Nevada Suit.")

At the core of the New Nevada Suit is the Lezdey Parties' claim that Arriva had a duty under the Protease License to record certain patents, defined as "Improvements" therein, in PSI's name, and that Arriva failed to do so. Rather, allege the Lezdey Parties, Arriva registered the Improvements in its own name. The Lezdey Parties seek payments of damages and royalties, and other relief, in respect of the

period following Arriva's assumption of the Protease License.

The Lezdey Parties base their claims on Section 2.04 of the Licensing Agreement, which provides in relevant part that, "[Arriva] hereby assigns to LICENSOR its entire irght [sic] title and interest in and to any IMPROVEMENTS ... The parties shall cooperate and act reasonably in seeking patent protection for IMPROVEMENTS." *See Arriva's Request for Judicial Notice* ("ARJN"), Doc. # 81, Ex. 1 at 23. Section 1.09 of the Protease License defines "Improvements" as "any inventions developed by [Arriva] or on its behalf during the term of this Agreement ... designed to be used to create products or processes in [PSI's defined market application] and [ ] [that] entail the practice of one or more of [certain patents identified by the agreement]." *Id.* at 21–23.

In response, Arriva contends that the Lezdey Parties filed the New Nevada Suit in violation of the discharge injunction provided by Bankruptcy Code § 1141(b)[5] and (c)[6], and Paragraph 19 of the Confirmation Order,[7] and that the Confirmation Order

---

3. Bankruptcy Code § 1123(b) provides: "Subject to subsection (a) of this section, a plan may—... (2) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;"

4. AlphaMed, a Lezdey controlled entity that he formed after his separation from Arriva, objected to confirmation, and appealed the order confirming Arriva's Plan. The appeal was not successful, and the confirmation order became final in due course.

5. Bankruptcy Code § 1141(b) provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

6. Bankruptcy Code § 1141(c) provides: "Except as provided in subsections (d)(2) and

(d)(3) of this section and except as otherwise provided in the plan or the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interest of creditors, equity security holders, and of general partners of the debtor."

7. Paragraph 19 of the Confirmation Order provides:

19. On and after the Confirmation Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court, all Persons or Entities who have held, hold or may hold any Claim arising before the Petition Date against or Interest in the Debtor and all Persons or Entities who have filed a Proof of Claim in the above-captioned Bankruptcy Case are permanently enjoined from and after the Confirmation Date from:
a. commencing, conducting or continuing in any manner, any suit, action or other

barred the Lezdey Parties from asserting the aforementioned alleged breaches of the Protease License.

After the Lezdey Parties filed the New Nevada Suit, Arriva obtained an order reopening this chapter 11 bankruptcy case, and then filed the present adversary proceeding against the Lezdey Parties.

Now before this court is Arriva's motion for summary judgment on its fourth claim for relief, in which Arriva argues that the Lezdey Parties are barred from bringing and prosecuting the New Nevada Suit. The court agrees, and will grant Arriva's motion.

### B. *Discussion*

#### 1. *Summary Judgment*

Federal Rule of Civil Procedure 56, applicable herein via Federal Rule of Bankruptcy Procedure 7056, provides for summary judgment where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court must view the facts in the light most favorable to the non-moving party. *See County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). The court will therefore assume, as the Lezdey Parties allege, that the patent applications at issue are properly characterized as Improvements under the Protease License, and that Arriva's act of registering those patents in its own name was a breach by Arriva of the Protease License.

#### 2. *Arriva's Assumption of the Protease License Created a Bar*

Bankruptcy Code § 365(b) provides that a debtor in possession may not assume an executory contract if there has been a default, unless such default is cured at the time of assumption.[8] The cure re-

---

proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) or enforcing, levying, or collecting, against (i) the Debtor or the Reorganized Debtor or their property and (ii) the officers and directors of Arriva for Claims arising after the Petition Date and prior to the Effective Date.

b. Notwithstanding the provisions of the Plan, nothing in the Plan shall be deemed or construed:

(1) To discharge the debt or liability of any person, other than the Debtor and the Reorganized Debtor, for any act, event or Claim arising before the Petition Date.

(2) To enjoin any person from commencing, conducting or continuing in any manner, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any person other than the Debtor or the Reorganized

Debtor for any act, event or Claim arising before the Petition Date.

8. Bankruptcy Code § 365(a) and (b)(1) provide, in relevant part, as follows:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default ...

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to

quirement applies to both monetary and nonmonetary defaults (subject to certain exceptions, not relevant here, for executory leases of real property).

A final order confirming a chapter 11 plan bars litigation of all issues that could have been raised in connection with confirmation. *See, e.g., Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect."). Such bar extends to both claims that were actually litigated and claims that could have been raised in the confirmation proceedings. *Browning v. Levy,* 283 F.3d 761, 772 (6th Cir.2002); *In re Cogliano,* 355 B.R. 792, 804 (9th Cir. BAP 2006).

Numerous courts have applied the foregoing two principles on numerous occasions to hold that a bankruptcy court order approving the assumption of an executory contract, or confirming a plan that provides for the assumption of an executory contract, is necessarily a finding that no uncured defaults exist. *NCL Corp. v. Lone Star Bldg. Centers (Eastern),* 144 B.R. 170, 179 (Bkrtcy.S.D.Fla.1992) ("when the bankruptcy court approves an assumption it necessarily finds that no uncured defaults exist."), *In re Diamond Mfg. Co., Inc.,* 164 B.R. 189, 201 (Bkrtcy.S.D.Ga. 1994) (holding that the bankruptcy court's order approving assumption of a lease, "conclusively determined that no uncured pre-assumption defaults existed."), *In re Ali Properties, Inc.,* 334 B.R. 455, 461 (Bkrtcy.D.Kan.2005) ("When this Court confirmed Reorganized Debtor's Plan, it blessed the assumption of this lease and

such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C) provides adequate assurance of future performance under such contract or lease.

made an implicit finding that the lease had been cured....").

Here, Arriva submitted each of the patent applications identified on Arriva's Amended Schedule B (Personal Property) to the patent authorities before Arriva filed its chapter 11 petition. If, then, these applications were Improvements within the meaning of the Protease License, Arriva's submitting the applications in Arriva's name was a breach of the Protease License that arose at the time of such submission, and the breach would have been in existence at the time Arriva notified the Lezdey Parties of its intention to assume the Protease License and of its belief that it was not in default thereunder.

The burden is on the non-debtor party to assert any defaults prior to the debtor's assumption of the executory contract. *Diamond Mfg. Co.* 164 B.R. at 199. The Lezdey Parties, however, did not allege any defaults that Arriva needed to cure, or object to Arriva's failure to cure, any default under the Protease License prior to confirmation of the plan.[9]

It follows that the Confirmation Order operated to bar the Lezdey Parties from asserting such defaults after entry thereof. *In re Hathaway,* 401 B.R. 477, 484 (Bankr. W.D.Wash.2009) ("The non-bankruptcy party to the lease has the burden to assert any defaults prior to assignment. When that party has knowledge of facts sufficient to give the party notice of a pre-petition claim prior to assumption, claim preclusion bars that party's later assertion of a claim based upon a prepetition breach.") *See also In re Cellnet Data Systems, Inc.,* 313 B.R. 604, 608–09 (Bankr.D.Del.2004)

9. The Lezdey Parties did object to confirmation of Arriva's plan on other grounds. *See ARJN,* Doc. # 81, Ex. 13. The court overruled their objection, and confirmed the Plan.

("Where the nonbankrupt party has knowledge of facts sufficient to place the party on notice that a 'potential' preconfirmation breach has occurred, *res judicata* bars that party from later asserting a claim based on the pre-petition breach."); *In re Lykes Bros. Steamship Co., Inc.*, 221 B.R. 881, 883 (Bankr.M.D.Fla.1997).

The court holds that the entry of the Confirmation Order, coupled with the Plan becoming effective, operated to bar the Lezdey Parties from alleging that Arriva's submission of the patent applications at issue in its own name was a breach of the Protease License, or from asserting any claims against Arriva based on such a breach.

### 3. *Alleged Lack of Notice*

█ The Lezdey Parties argue that they did not receive adequate notice prior to assumption that Arriva had submitted patent applications in its own name that were Improvements under the Protease License. It is true that the *res judicata* bar would not arise if Arriva did not notify the Lezdey Parties of its intent to assume the Protease License, and of its position that it was not in default thereunder. *See National Gypsum*, 208 F.3d at 513 (holding that, "the debtor had responsibility to assure that the non-debtor party was on notice of the debtor's specific intent to assume the contract.").

Here, however, this argument fails. The sole basis for the Lezdey Parties' allegation is a Declaration by Jarett Lezdey, an officer of defendant J.L. Technology and a member of defendant Jamie Holdings LLC, stating:

"In connection with its plan, as confirmed by the Confirmation Order, Arriva assumed the License Agreement [*i.e.* the Protease License]. At that time, none of the defendants to the present bankruptcy court action had any knowledge, or any way of knowing, that Arriva had applied for patents that could be considered 'Improvements' under the License Agreement. Although the plan and disclosure statement listed patent application numbers, patent applications are confidential until issued, and there is no way to use the number to learn what the technology in question is."

*Jarett Lezdey Dec.*, Doc. # 89, para. 12. This statement, however, does not raise a genuine issue of material fact as to notice. What Jarett Lezdey or the Lezdey Parties actually knew is not the relevant inquiry. Rather, what notice Arriva provided them is the relevant focus of inquiry.[10] *See National Gypsum*, 208 F.3d at 513; *Diamond Mfg. Co.*, 164 B.R. at 201. Moreover, Jarett Lezdey's lay legal opinion, which he provides without citation of any legal authority, on what is confidential as a matter of patent law does not raise any issue of fact. *See Bader v. Northern Line Layers, Inc.*, 503 F.3d 813, 820 n. 4 (9th Cir.2007) ("bare assertions of a legal conclusion" are insufficient to raise a genuine issue of material fact).

The facts and legal authorities set forth in the Declaration of Karen Canaan ("Canaan"), an attorney registered to practice before the U.S. Patent and Trademark Office, show, contrary to Jarett Lezdey's legal opinion, that the patent applications included on Arriva's Schedule B were not confidential at the time Arriva proposed to assume the Protease License. *Declara-*

---

**10.** As a related issue, Arriva argues, with some persuasiveness, that what the Lezdey Parties knew is irrelevant. Rather, argues Arriva, the relevant focus should be the notice it gave to PSI, the licensor under the Protease License, and an entity called Sonoran Desert Chemicals, LLC. Sonoran is the owner of the patents, and authorized PSI to act on its behalf in respect of the license. In any event, PSI and Sonoran were on notice to the same extent as the Lezdey Parties.

*tion in Support of Reply in Support of Arriva's Motion for Summary Judgment,* Doc. # 93–2. In her Declaration, Canaan cites 35 U.S.C. § 122; 37 C.F.R. § 1.211; and Manual of Patent Examining Procedure § 1120 to the effect that on November 29, 2000, the law changed to institute pre-grant publication of U.S. Patent Applications 18 months from the application's earliest filing date, subject to several exceptions not relevant here. *Id.* at para. 8.

Canaan goes on to specify the dates on which all of the patent applications at issue were published. And each such application, without exception, was published no later than September 25, 2005, well before Arriva filed this chapter 11 case, and a *fortiori,* in time to provide the Lezdey Parties with plenty of time to object to the assumption.

Moreover, the Lezdey Parties' active participation in the Arriva bankruptcy case belies any suggestion that they were not on notice of Arriva's intent to assume the Protease License and belief that it was not in default thereunder. Prior to its assumption of the Protease License, Arriva served the Lezdey Parties with its Schedules B and G, putting them on notice of, respectively, the patents of which it claimed ownership, and of its executory contracts. Arriva also served the Lezdey Parties with notice that it intended to assume the executory contracts in Schedule G, which included the Protease License.

And Arriva's Disclosure Statement, which it served on the Lezdey Parties prior to the assumption, stated that "to the extent that the Protease License is an executory contract, it is the position of the Debtor that there are no defaults." *ARJN,* Doc. # 81, Ex. 12, p. 26. Indeed,

the Lezdey Parties actively contested approval of the Disclosure Statement, without raising the issue of any breach by Arriva of the Protease License. Thus, they were obviously on notice of the contents of Arriva's Disclosure Statement.

For the foregoing reasons, the court rejects the argument of the Lezdey Parties that they were not on notice of any breach by Arriva of the Protease License in time to assert such breach prior to Arriva's assumption thereof.

### 4. *Alleged Post–Confirmation Breaches*

■ The Lezdey Parties have not asserted, and do not now assert, any claims against Arriva for damages or other relief in respect of any pre-confirmation breaches by Arriva of the Protease License.[11] Even so, the Lezdey Parties argue that Arriva breached the Protease License after confirmation and that, even if they are barred by *res judicata* from asserting any pre-confirmation breaches, such bar cannot excuse Arriva's post-confirmation breaches or infringements. Specifically, the Lezdey Parties claim that Arriva's post-confirmation use of the Improvements under the Protease License and its failure to pay royalties in connection therewith are new breaches, the assertion of which is not barred.

Further, the Lezdey Parties argue that the Protease License requirement that Arriva "execute any other further documentation necessary or appropriate to evidence, secure or perfect LICENSOR'S rights in the IMPROVEMENTS" gives rise to a continuing obligation by Arriva to correct any improper documentation with respect to any Improvement. *See Opposi-*

---

11. The Lezdey Parties' *Opposition to Motion for Summary Judgment* states that, "With regard to the Improvements claims, at most the plan results in claim preclusion as to claims that Defendants are owed a cure payment for pre-confirmation breaches of the License Agreement or pre-confirmation infringement of their patents. No such claim is being made nor has such a claim been made." Doc. # 88, p. 7.

*tion to Motion for Summary Judgement,* Doc. # 88, p. 13.

■ The court disagrees. In general, a cause of action for breach of contract arises at the moment of breach. *See Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (Cal.1999) (stating that a cause of action accrues when, under the substantive law, the wrongful act is done and liability arises); *Howard Jarvis Taxpayers Ass'n v. City of La Habra,* 25 Cal.4th 809, 815, 107 Cal. Rptr.2d 369, 23 P.3d 601 ("a cause of action accrues upon the occurrence of the last element essential to the cause of action") (internal citations omitted).

■ The Protease License created obligations by Arriva to assign any Improvement to the Licensor, and to take steps to protect that intellectual property on behalf of the Licensor. *See ARJN,* Doc. # 81, Ex. 1 at 23. However, if Arriva breached those obligations, such breach would have occurred when Arriva submitted patent applications in its own name that were properly characterized as Improvements under the Protease License. Because any causes of action for breach of the Protease License that are grounded on Arriva's patents being Improvements within the meaning of the Protease License arose prior to Arriva's assumption of the Protease License, such causes of action are barred by *res judicata* as discussed hereinabove.[12] *Trulis v. Barton,* 107 F.3d at 691. *See also Browning v. Levy,* 283 F.3d at 772; *In re Cogliano,* 355 B.R. at 804.

To put it simply, the Lezdey Parties may not "lie in wait" by failing to allege prior to the time Arriva assumed the Protease License that Arriva breached the Protease License by applying for the patents at issue in its own name, and then turn around, after Arriva assumed the Protease License, and bring a claim against Arriva that is necessarily grounded on Arriva's alleged prior breach. ("Bankruptcy Courts generally take a dim view of parties in interest who, for tactical or opportunistic reasons 'lay in the weeds' through confirmation, only to emerge later and bedevil previously confirmed plans." *Ali Properties,* 334 B.R. at 461.)

Here, the time for the Lezdey Parties to raise the issue or litigate whether the patents at issue were Improvements under the Protease License was prior to confirmation. They did not raise the issue at that time. They are therefore barred from raising it after confirmation.

The Lezdey Parties cite *In re Dahlgren International, Inc.,* 147 B.R. 393 (N.D.Tex. 1992) as authority to the contrary. *Dahlgren* however, is readily distinguishable. In *Dahlgren,* unlike the present case, the debtor proposed a plan of reorganization that contemplated post-confirmation resolution of the claimant's cause of action for patent infringement, and such cause of action therefore necessarily survived confirmation.

The court therefore rejects the Lezdey Parties' post-confirmation breach or infringement argument.

### 5.  *The Discharge Argument*

As a related argument, the Lezdey Parties argue, citing *National Gypsum,* 208

---

**12.** There is an exception to the general rule that a cause of action accrues at the time of breach, that delays accrual until the injured party discovers the facts constituting the breach. *See Norgart* at 397–98. Under the "discovery rule," the cause of action accrues when the injured party has "notice or information of circumstances to put a reasonable person on inquiry ... [the injured party] must indeed seek to learn the facts necessary to bring the cause of action in the first place—he cannot wait for them to find him and sit on his rights...." *Id.* Here, however, the Lezdey Parties were on notice of any cause of action for breach accrued prior to assumption of the Protease License, as discussed *infra.*

F.3d at 509, that although Bankruptcy Code § 1141(d) generally operates to discharge pre-confirmation debts, it cannot discharge pre-confirmation debts arising from the breach of assumed executory contracts.[13] In *National Gypsum,* the court stated that "§ 1141(d) cannot be read to provide for discharge of amounts in default under assumed contracts in a manner that would nullify the cure requirement of section 365(b)(1)." *Id.*

*National Gypsum,* however, is easily distinguished. In that case, the debtor's plan provided for the debtor's assumption of the executory contract at issue, and set forth the debtor's position that the appropriate cure amount under § 365(b)(1) was "$0." *Id.* In this limited respect, *National Gypsum* is very similar to the facts here.

But that is where the similarity stops. *National Gypsum* turned on the non-debtor party's lack of notice, and the fact that the bankruptcy court had reserved jurisdiction, post-confirmation, to resolve disputes regarding the appropriate cure amount. *Id.* at 503.

The bankruptcy court had granted summary judgment to the debtor, which had sought a declaratory judgment that it owned nothing to Century Indemnity Co., the non-debtor party to an executory contract, as a cure amount under the executory contract at issue. The district court reversed, and the debtor appealed.

The Fifth Circuit summarized the district court's reasons for reversing the bankruptcy court's grant of summary judgment, noting that the district court had held that genuine issues of material fact existed as to

whether Century [the non-debtor party] was sent copies of crucial notices and mailings ... Specifically did Century receive either the plan or the notice enumerating which executory contracts National Gypsum intended to assume, either one of which would have alerted Century that the ... [a]greement was being assumed with a $0 cure amount. Second, the summary judgment proof demonstrated only that a representative of Century knew of the commencement of National Gypsum's Chapter 11 reorganization, not of the specific intent to assume.

Finally, the district court held that the confirmation order was not *res judicata* as to the cure amount, because the bankruptcy court "unambiguously anticipated disputes regarding cure amounts and retained jurisdiction to hear them." *Id.* at 503.

The Fifth Circuit went on to affirm the district court, concluding, "Since *res judicata* can not operate to bar Century's claim if notice was inadequate, summary judgment in favor of National Gypsum was inappropriate." *Id.* at 514.

Here, notice was adequate for the reasons stated above. And nothing in *National Gypsum* is contrary to the *res judicata* principles discussed above. Therefore, *National Gypsum* is of no assistance to the Lezdey Parties.

### C. *Conclusion*

For the forgoing reasons, the court will grant summary judgment in favor of Arriva.

---

13. Bankruptcy Code § 1141(d)(1) provides, in relevant part: "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—(A) discharges the debtor from any debt that arose before the date of such confirmation. . . ."