26 Tex. Bus. 36



The Business Court of Texas
1st Division

| | | |
|---|---|---|
| DALLAS SPORTS GROUP, LLC AND RADICAL ARENA, LTD., *Plaintiffs* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Cause No. 25-BC01B-0049 |
| v. | | |
| DSE HOCKEY CLUB, L.P. and DALLAS SPORTS & ENTERTAINMENT, L.P., *Defendants* | | |

## OPINION REGARDING COMBINED DISPOSITIVE MOTIONS

*Syllabus*[1]

*This opinion addresses (i) an entity's duty to act on its officers, agents, or representatives' actual knowledge of facts arguably presented to a different entity; (ii) due process concerns for parties added to a case shortly before a dispositive event affecting that party's rights; and (iii) the applicability of res judicata to causes of action based on post-confirmation events regarding assumed and accepted contracts.*

---

[1] *This syllabus is for the reader's convenience. It is not part of the court's opinion, and it is not legal authority.*

[¶ 1]  The parties asked the court to opine regarding its May 5, 2026, orders deciding that (i) the Mavericks' redemption letter and cash tender method was also effective as to Dallas Sports & Entertainment, L.P. (DSELP); (ii) the Court's April 2, 2026, summary judgment rulings negated the Stars' declaratory judgment counterclaim; and (iii) the Stars' 2011 bankruptcy was not a defense to the Mavericks' claims.  *See* TEX. R. CIV. P. 360(a)(1).

[¶ 2]  The parties are familiar with the facts the court discussed in its April 2nd Opinion and Order on Combined Summary Judgment Motions.  So, the court focuses on those additional facts relevant to this opinion.

## I. Background
### A. The Mavericks pursued the "Stars'" interests, DSELP remained silent.

[¶ 3]  On October 28, 2025, Dallas Sports Group, LLC and Radical Arena, Ltd. (Mavericks), invoked the court's declaratory judgment jurisdiction to determine whether they effectively redeemed DSE Hockey Club, L.P.'s (Hockey Club) interests in a limited partnership and its general partner.[2]

---

[2] *See generally* Plaintiffs' Original Petition and Application for Injunctive Relief (Mavericks' OP).

[¶ 4]  From the outset, the Mavericks associated "Hockey Club" with the "Dallas Stars" or the "Stars":[3]

> Hockey Club owns and operates the Dallas Stars, the professional ice hockey team headquartered in Frisco that competes in the National Hockey League.[4]

Hockey Club and the "Stars" did not then object to, complain about, or raise any red flags regarding those associations.

[¶ 5]  Also from the outset, the Mavericks identified Hockey Club as the entity that co-owned Center Operating Company, L.P. (COC), which leases the American Airlines Center (the Arena) from the City of Dallas, and its general partner, Center GP, LLC (Center GP).[5]  The Stars did not complain or correct the Mavericks.

[¶ 6]  The Mavericks identified Brad Alberts as "the Stars' CEO and President . . ."[6]  Again, the Stars did not complain about or correct that statement.

[¶ 7]  The Mavericks asserted that their October 25, 2024, redemption letter exercised "their right to cause Center GP to purchase and redeem the

---

[3] *See* Mavericks' OP. at 1, Preface, ¶ 1, and *passim.*
[4] Mavericks' OP ¶ 21.
[5] Mavericks' OP ¶ 23.
[6] Mavericks' OP ¶ 29.

Stars' entire company interest in Center GP for the redemption price on October 25, 2024."[7] Although the Mavericks alleged that their letter caused the redemption of *the Stars'* ownership interests, the Stars did not object that the Mavericks' letter was addressed to the wrong Stars entity or that the correct owner was not identified, served, or sued.

[¶ 8]   The Mavericks next requested

> [t]hat the Court declare the Mavericks purchased and redeemed the Stars' company interest in COC Partnership and Center GP, and the Mavericks become on that date the sole partner of COC Partnership and the sole member of Center GP.[8]

[¶ 9]   That is, the Mavericks asserted that they acquired the Stars' 50% interests in COC and Center GP.

[¶ 10]   The Mavericks also asserted a tortious interference claim and requested emergency and permanent injunctive relief.[9]

[¶ 11]   The Mavericks' sued almost exactly one year after they delivered their redemption letter and cash tender to the Stars' owner, Tom Gaglardi, and the Stars' CEO and President, Brad Alberts.  There is no evidence that during

---

[7] Mavericks' OP ¶ 72.
[8] Mavericks' OP ¶ 73.
[9] Mavericks' OP ¶s 84-96.  The Mavericks nonsuited their tortious interference claim before the court's final judgment.

that one year gap the Stars expressed any confusion as to who the proper party was.

[¶ 12]   Approximately eight hours after the Mavericks sued, Hockey Club filed its original counterclaim seeking a declaratory judgment that the Mavericks' redemption effort failed for several reasons—but not one of them was because the redemption letter's address block said Hockey Club instead of DSELP or that DSELP owned the Stars' COC or Center GP interests.[10]

[¶ 13]   Rather, the Stars alleged that:

> DHC and DSRA obtained their ownership interests in COC and CGP through various assignments concurrent with their respective purchases of the Stars and Mavericks.  Through those assignments, DHC and DSRA each own a 49.9 percent interest as limited partners in COC.  CGP owns the remaining .1 percent of COC.  CGP is the general partner of COC.  DHC and DSRA are equal exclusive owners of CGP—neither group may act without agreement of the other.[11]

[¶ 14]   "DHC" in that pleading means Hockey Club.  "DSRA" means the Mavericks.  The original counterclaim admitted as much:

> DHC controls the Stars and along with DSRA owns the companies that operate the AAC [Arena].  The terms "Stars" and "DHC" are used interchangeably in this pleading."[12]

---

[10] *See generally* Hockey Club's October 28, 2025, Original Counterclaim (Hockey Club OC).

[11] *See* Hockey Club's OC ¶ 16.

[12] *See* Hockey Club's OC at 1, n.1.

That is, Hockey Club admitted that it acted for and controlled the "Stars" organization.

[¶ 15]   The same counsel later represented DSELP in this case.  Thus, there was no conflict between those entities and their interests were aligned.

[¶ 16]   Three weeks later, Hockey Club filed its First Amended Counterclaim alleging essentially the same facts and circumstances as its original counterclaim.[13]

[¶ 17]   That first amended counterclaim used DHC throughout without mentioning DSELP[14] and again asserted Hockey Club's ownership of the Stars' interests in COC and Center GP.[15]

[¶ 18]   The Stars further urged that:

> This lawsuit arises from a dispute between DHC and DSRA regarding the Agreement of Limited Partnership of COC (the "COC Agreement"), the Limited Liability Company Agreement of CGP (the "CGP Agreement"), and the parties' rights under those agreements.[16]

[¶ 19]   The Stars also pled that:

> Since the creation of CGP and COC, the Mavericks' entities also transferred and assigned their interests in the companies.  As of

---

[13] *See generally* Hockey Club's November 18, 2025, First Amended Counterclaim (Hockey Club's FAC).
[14] *See generally* Hockey Club's FAC.
[15] Hockey Club's FAC ¶s 6, 9, 18.
[16] Hockey Club's FAC ¶ 19.

the filing of this lawsuit, DSG and Radical collectively own the remaining 50 percent interest in CGP and 49.95 percent interest in COC. Thus, DHC and DSRA each own an equal share of CGP and COC.[17]

[¶ 20]  These were not isolated admissions or failures to deny.

[¶ 21]  Moreover, Hockey Club admitted to receiving the Mavericks' redemption letter[18] and the Mavericks' cash tender.[19]  Again, it did so without suggesting there were issues with the company named in the address block, who received the cash tender, or who the proper defendants should be.

[¶ 22]  Contemporaneous with its first amended counterclaim, Hockey Club filed its original answer.[20]  That answer alleged twenty-two affirmative defenses—none of which asserted that (i) Hockey Club was sued in the wrong capacity, (ii) DSELP was a necessary party, (iii) DSELP lacked knowledge about the dispute or an opportunity to defend its interests, or (iv) the name in the redemption letter's address block invalidated the Mavericks' redemption effort.[21]

---

[17] Hockey Club's FAC ¶ 27.
[18] Hockey Club's FAC ¶ 28.
[19] Hockey Club's FAC ¶ 32.
[20] DSE Hockey Club's Original Answer (Hockey Club OA).
[21] *See* Hockey Club OA ¶ 9.

[¶ 23]  On December 12, 2025, Hockey Club sent a letter to COC and Center GP asserting *Hockey Club's* right to redeem the Mavericks' interests in those entities.[22]  That letter did not mention DSELP.  Rather, it said its purpose included protecting Hockey Club's interests in those companies.[23]

[¶ 24]  That same day, Hockey Club filed its Second Amended Counterclaim, which again said that Hockey Club owned the Stars' COC and Center GP interests.[24]  That pleading did not mention a defense due to the redemption letter allegedly being addressed to the wrong company or DSELP's role.

**B. The Stars consent to an accelerated schedule.**

[¶ 25]  The Mavericks sought a TRO because the Stars were allegedly refusing to authorize paying the partnership's employees' annual bonuses and other Arena expenses.[25]  The Stars relented on the employee bonuses, and the Mavericks dropped their requested TRO.

---

[22] Appendix in Support of Plaintiffs' Responses to Motions for Summary Judgment (Mavericks' MSJ Resp. App.) at 48.

[23] Mavericks' MSJ Resp. App. at 48.

[24] *See, e.g.*, Hockey Club's Second Amended Counterclaim (Hockey Club's SAC) ¶s 9, 18, 26-28, 62-63.

[25] Mavericks' OP ¶s 5-7, 14, 59-60, 67, 84-98.

[¶ 26]   However, with the parties' agreement, the court adopted an accelerated January 26, 2026, trial date instead of having a temporary injunction hearing.[26]  The parties later agreed to a May 11, 2026, trial date. The Stars did not file an objection or motion for continuance.

## C. The parties litigated the April 2nd Order's issues.

[¶ 27]   Hockey Club and the Mavericks filed a combined seven summary judgment motions.  Hockey Club's motions addressed whether:

> (i) the COC and Center GP entities, as opposed to the Mavericks, are the only proper parties capable of redeeming the Stars' ownership interests;
>
> (ii) the Mavericks' designations of Las Vegas as the principal offices for certain Mavericks corporate entities prevent the Mavericks from asserting their claimed redemption rights as a Remaining Partner;
>
> (iii) limitations bar the Mavericks' "breach" cause of action;
>
> (iv) the fact that the Stars were not located in Dallas when the parties signed the partnership and LLC agreements defeats the Mavericks' claims based on the original impossibility doctrine; and
>
> (v) the Mavericks waived their claims by knowing the Stars' location for more than twenty years without exercising redemption rights.[27]

---

[26] *See* November 3, 2025, Notice of Trial Setting.
[27] *See Dallas Sports Group, LLC v. DSE Hockey Club, LP*, 2026 Tex. Bus. 15, ¶ 22, ___ S.W.3d ___ (1st Div.).

-9-

[¶ 28] Hockey Club's five motions did not suggest that DSELP (i) should be joined, (ii) had the rights at issue, (iii) lacked knowledge of and control over the dispute, or (iv) was somehow prejudiced. At this point, there was still no indication that the Stars intended to make those issues in this case.

[¶ 29] Indeed, Hockey Club's summary judgment evidence included Brad Alberts' December 18, 2025, declaration testifying that:

> 2. I have been employed by the Stars since 2012 in various executive and officer positions. I have served as the President of the Stars since March 2, 2018, and Chief Executive Officer since July 10, 2020. I continue to serve in those positions. In that capacity [sic], I am familiar with the assets owned by the Stars, the contracts entered into by the Stars, and the documents the Stars maintain.
>
> 3. DSE Hockey Club L.P. purchased the Dallas Stars professional hockey team in 2011 and became the successor to Arena/Dallas Stars, Inc. under the (1) Agreement of Limited Partnership of Center Operating Company, L.P. and (2) Limited Liability Company Agreement of Center GP, LLC. DSE Hockey Club L.P. also became the successor to Dallas Stars, L.P. under the Stars Franchise Agreement. [28]

He did not mention DSELP.

[¶ 30] The Mavericks' two motions addressed whether:

> they effectively caused a redemption of the Stars' COC and Center GP interests;

---

[28] Appendix to Hockey Club's Traditional Motions for Summary Judgment (Stars' MSJ App.) Vol. 1 at 6-7.

the Stars' board members were terminated from the Center GP board;

the parties' nonwaiver clauses bar claims that the Mavericks delayed in exercising their redemption rights; and

laches is a defense to their claims.[29]

[¶ 31]  The court set those motions for a January 26th hearing.  The hearing was to be at the SMU law school because it could handle the expected crowd.

[¶ 32]  On January 19th, Mr. Alberts signed a second declaration repeating his prior statements about Hockey Club owning the Stars' COC and Center GP interests.[30]

[¶ 33]  During a conference, the court requested organization charts showing the corporate relationships.

[¶ 34]  The Mavericks provided their chart first, and the Stars later provided theirs.  The Stars' chart showed that DSELP owned Hockey Club and Hockey Club's general partner.  But it said nothing about which entity owned the Stars' COC or Center GP interests.

[¶ 35]  On January 25th, SMU announced it would close the campus on the 26th due to an ice storm.  So, the court postponed the hearing.

---

[29] *See Dallas Sports*, 2026 Tex. Bus. 15, ¶23.
[30] Stars' MSJ App. Vol. 3 at 4-5 (App. 1035-1036).

[¶ 36] That same day—despite Hockey Club's prior contrary allegations, arguments, counterclaims, and sworn evidence—the Stars said for the first time that DSELP had interests in COC and Center GP[31] and might be the actual successor to the company agreements.

[¶ 37] If that were correct, the parties' summary judgment materials could have been worthless, and the proceedings delayed, unless those materials also applied to DSELP. Or a second case with DSELP might have become necessary. Further, had the Stars revelation not occurred, the court could have decided the case based on the materials before it only to later learn that the exercise may have been pointless.

[¶ 38] So, with the parties' agreement, the court reset the summary judgment hearing to March 6, 2026.[32] And the parties later filed competing motions to add DSELP as a party.[33]

[¶ 39] On February 5th, the Stars filed a "Supplemental Declaration of Brad Alberts" in which he testified that:

---

[31] *See* DSE Hockey Club's Motion for Leave (Motion for Leave) ¶s 3, 6; Plaintiffs' Response to Defendant's Motion for Leave and Rule 37 Motion (Response to Motion for Leave) at 9.
[32] *See* February 12, 2026, Amended Notice of Hearing.
[33] *See generally* Motion for Leave; Response to Motion for Leave.

3. DSE Hockey Club L.P. purchased the Dallas Stars professional hockey team in 2011 and became the successor to Dallas Stars, L.P. under the Stars Franchise Agreement.

4. In my previous Declarations, executed on December 18, 2025 and January 19, 2026, I stated that DSE Hockey Club L.P. also became the successor to Arena/Dallas Stars, Inc. under the (1) Agreement of Limited Partnership of Center Operating Company, L.P. and (2) Limited Liability Company Agreement of Center GP, LLC. Upon review of additional documents, I have subsequently learned that statement was not correct.

5. The actual entity that became the successor to Arena/Dallas Stars, Inc. under the (1) Agreement of Limited Partnership of Center Operating Company, L.P. and (2) Limited Liability Company Agreement of Center GP, LLC, is Dallas Sports & Entertainment, L.P.[34]

[¶ 40] That same day, Hockey Club served its First Amended Disclosures in which it wrote:

[The Mavericks'] redemption was ineffective for numerous reasons. First, DHC is not a party to the COC and CGP company agreements and holds no interest in those companies. Also, the COC and CGP company agreements require that redemption be effectuated by the companies themselves, not their members/partners. Moreover, the COC and CGP company agreements specify that only a Remaining Partner/Member could cause the companies to redeem interests. DSRA was not a Remaining Partner/Member because it designated Las Vegas, Nevada as the location of the principal corporate and executive offices for the Mavericks.[35]

---

[34] Supplemental Declaration of Brad Alberts ¶s 3-5.
[35] Response to Motion for Leave App. at 37.

[¶ 41]  Those amended disclosures twice admitted that beginning no later than November 12, 2025, Hockey Club was DSELP's agent for purposes representing DSELP's interests in this dispute.[36]

[¶ 42]  However, those disclosures did not identify DSELP as a potential party.[37]  Nor did they say that (i) putting Hockey Club's name in the redemption letter's address block rendered the redemption ineffective, (ii) DSELP did not know about the suit, or (iii) DSELP was prejudiced.[38]

[¶ 43]  The Stars' February 11th Motion for Leave stated:

> By this motion the Stars seek leave to amend their pleadings regarding prior allegations regarding the ownership of Center Operating Company, L.P. and Center GP, LLC.[39]

[¶ 44]  The Mavericks' response (i) noted that the Stars filed their motion for leave "only a few days before the rescheduled March 6th hearing date," (ii) pressed an urgent need to resolve this dispute, and (iii) argued for leave to join DSELP."[40]

> pursuant to "terms" that will require (i) that [DSELP] is added as a party subject to the current claims and defenses as of the

---

[36]  Response to Motion for Leave App. at 38.
[37]  Response to Motion for Leave App. at 36.
[38]  *See generally* Motion for Leave .  For that reason alone, the court may properly disregard the Stars' argument that the letter is ineffective based on the name in the address block. *See* TEX. R. CIV. P. 193.5(a), 193.6(a).
[39] Motion for Leave ¶ 6.
[40]  Response to Motion for Leave at 6.

-14-

time they were first asserted, and (ii) that the joinder of [DSELP] will not cause any deadline in the Court's Scheduling Order to be extended absent party consent and approval by the Court including, without limitations, the trial date.[41]

[¶ 45]   On February 25th, the court signed its Order Regarding Joinder. Pursuant to that order, DSELP was deemed to have participated in the then-pending summary judgment proceedings as if it were an original party to them.[42]   That is, the court's substantive rulings would apply to Hockey Club *and* DSELP without needing to refile those documents.[43]   Specifically, that order provided that:

> 5. The Stars may amend their pleadings to assert additional causes of action or affirmative defenses relating to DSELP and this controversy.
>
> 6. The court considers references to the Stars in the parties' existing pleadings, summary judgment motions (including their grounds), responses, briefs, and arguments to also apply to DSELP without further amendment—without prejudice to the parties' ability, including DESLP's ability, to later assert additional summary judgment or other motions relating specifically to DSELP's role in this case. (That is, the parties' existing, substantive legal arguments apply in principle as well.)
>
> 7. The court's existing scheduling order remains in place.

---

[41] Response to Motion for Leave at 1-2.
[42] February 25, 2026, Order Regarding Joinder ¶ 6..
[43] February 25, 2026, Order Regarding Joinder ¶ 6.

8. The parties are to use their best efforts to contact the court's manager and arrange a status conference on Thursday, February 26, 2026, or as soon thereafter as possible.[44]

[¶ 46]  During a February 26th status conference, the parties agreed that adding DSELP would not affect the pending summary judgment motions or the upcoming hearing on those motions.[45]

[¶ 47]  The Mavericks later amended their petition to add DSELP as a defendant.[46]

[¶ 48]  The Stars amended their pleadings to add affirmative defenses for, and a counterclaim by, DSELP.  The Stars also filed amended summary judgment motions changing only the phrase "Stars' interests" to "Stars' purported interests."[47]

[¶ 49] However, neither DSELP nor Hockey Club moved for a continuance or objected to the Order Regarding Joinder.

---

[44] February 25, 2026, Order Regarding Joinder ¶s 5-8.

[45] 02/26/26 Status Conference Tr. at 4:22-5:18.

[46] The rules provide that, "Before a case is called for trial, additional parties necessary or proper parties to the suit, may be brought in, either by the plaintiff or defendants, upon such terms as the court may prescribe; but not at a time or manner to unreasonably delay the trial of the case."  TEX. R. CIV. P. 37.  The Stars did not object that adding DSELP under these circumstances was in a time or in a manner that would unreasonably delay trying the case.

[47] *Compare* Stars' Original Impossibility MSJ ¶ 6 *with* Stars' Amended Original Impossibility MSJ ¶ 6.

[¶ 50]  Excluding any affirmative defenses and counterclaims unique to DSELP, the parties' substantive dispute focused on (i) the Mavericks' claim that they caused the redemption of the Stars' ownership interest in the entities operating the City of Dallas's American Airlines Center where both teams play their home games and (ii) the Stars' affirmative defenses and related counterclaims.

[¶ 51]  For two hours on March 6th, the court heard oral arguments regarding all seven motions and took them under advisement.

[¶ 52]  In short, the court's resulting April 2nd, ninety-page opinion and order determined that the Mavericks' redemption letter and accompanying $110 cash tender was a sufficient method to cause the redemption.  *Dallas Sports*, 2026 Tex. Bus. 15, ¶s 46-69, 159-162.  That order also rejected the Stars' arguments that:

(i) limitations and waiver barred the Mavericks' claims;

(ii) the Mavericks' redemption letter and cash tender were ineffective because (a) the letter was addressed to Hockey Club instead of DSELP, and (b) only the partnership and general partner—and not the Mavericks—could redeem the Stars' interests; and

(iii) the original impossibility defense prevented the Mavericks' recovery.

*Id.*, ¶s 46-69, 97-109.

[¶ 53] Further, the April 2nd Order rejected on its merits the Stars' laches defense. *Id.*, ¶s 205-223.

[¶ 54] Accordingly, the court's order disposed of much of the case but left the remaining issues of whether (i) the Mavericks' redemption method was valid as to DSELP; (ii) the court's April 2nd rulings substantively resolved DSELP's affirmative defenses and counterclaims; and (iii) res judicata effects from the Stars' 2011 bankruptcy case defeated the Mavericks' claims. Any attorneys' fees award was also left to be decided.

[¶ 55] The court released three orders on May 5th ruling for the Mavericks on all three issues this opinion addresses. Less than a week later, the court ordered that the parties were responsible for their own attorneys' fees and costs. Accordingly, the court entered a final judgment on May 20, 2026.

## II. Applicable Standards

### A. Summary Judgment

[¶ 56] At any time, a party may move with or without supporting evidence for a summary judgment as to all or any part of any causes of action asserted against it. TEX. R. CIV. P. 166a(b). The motion must state its specific grounds. *Id.* at 166a(c).

[¶ 57]   Thereafter, the court *shall* render judgment if the pleadings, summary judgment filings, and properly filed evidence show that, except as to the amount of damages, there is no *genuine* issue as to any *material* fact and the movant is entitled to judgment as a matter of law on the issues stated in the motion or in an answer or any other response. *Id.*; *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

[¶ 58]   So, a summary judgment motion

…is essentially a motion for a pretrial directed verdict. * * * Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. * * * [Courts] review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. * * *

*Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006) (citations omitted).

[¶ 59]   A genuine issue of fact exists if more than a scintilla of evidence supports the alleged fact. *See Amazon.com Servs. LLC v. Grant*, No. 05-23-01306, 2024 WL 5053063, at *2 (Tex. App.—5th Dist. Dec. 10, 2024, no pet.). Evidence is more than a scintilla when it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King*

*Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Hanover*, 953 S.W.3d 706, 711 (Tex. 1997)).  However, less than a scintilla exists when the evidence is "so weak as to do nothing more than create a mere surmise or suspicion" of a fact.  *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 640 S.W.2d 61, 63 (Tex. 1983)).

**B.  Rule 166(g)**

[¶ 60]   Rule of Civil Procedure 166 provides that the trial court "may in its discretion" direct the parties to appear before it for a pretrial conference to consider, among other things, "[t]he identification of legal matters to be ruled on or decided by the court."  The court "shall make an order that recites the action taken at the pretrial conference … and which limits the issues for trial to those not disposed of by admissions, agreements of counsel, or rulings of the court."  TEX. R. CIV. P. 166.  Rule 166's purpose is to "assist in the disposition of the case without undue expense or burden to the parties."  *Id.*

[¶ 61]   Rule 166(g) thus "authorizes trial courts to decide matters that though ordinarily facts questions, have become questions of law because 'reasonable minds cannot differ on the outcome.'"  *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 322 (Tex. App.—

14th Dist. 2003, pet. denied)). When a Rule 166(g) order disposes of claims in this fashion, the order is akin to a summary judgment order, and [appellate courts] review the order de novo. *Id.* If the non-movant has raised a fact issue on the claim, dismissal under Rule 166(g) is not proper. *See McCreight v. City of Cleburne*, 940 S.W.2d 285, 288 (Tex. App.—10th Dist. 1997, writ denied); *see also King Ranch*, 118 S.W.3d at 751.

### III. Analysis

**A. Did the Mavericks' redemption method also apply to DSELP?**

**1. Summary**

[¶ 62] Yes, the Mavericks' redemption method was effective as to DSELP because the Mavericks' letter and cash got to the right people, Texas elevates substance over form, and DSELP was in privity with Hockey Club and was not misled or prejudiced.

**2. Parties' Arguments**

[¶ 63] The Mavericks' Rule 166(g) Motion Regarding the Binding Effect of the Court's Summary Judgment Order on Dallas Sports & Entertainment, L.P. (DSELP Redemption Motion) argued that the Mavericks' redemption letter and cash tender bound DSELP for these reasons:

> (i) relying principally on *International Bankers Life Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963), DSELP had actual notice of the redemption

letter because its owner and top executives actually received the letter and deposited the cash in DSELP's safe (before returning the cash to the Mavericks);

(ii) DSELP is bound by Alberts' multiple sworn statements regarding Hockey Club being the proper party;

(iii) Hockey Club acted as DSELP's agent regarding these issues; and

(iv) the Court's Joinder Order bound DSELP because it did not advance unique arguments on DSELP's behalf.[48]

[¶ 64]   The Stars responded that:

(i) a fact issue exists as to whether DSELP received the payment;

(ii) the Mavericks' estoppel argument is legally and factually inadequate;

(iii) the Mavericks cannot establish as a matter of law that Hockey Club received payment as DSELP's agent;

(iv) DSELP is not bound by the court's Summary Judgment Order; and

(v) regardless of who the Mavericks paid, the Mavericks could not redeem DSELP's interests.[49]

[¶ 65] In sum, the evidence conclusively establishes that DSELP received the redemption letter and cash tender (or Hockey Club was DSELP's agent). So, the court need not address the estoppel issue. Accordingly, the court concludes that the April 2nd Order binds DSELP and therefore resolved the Mavericks' ability to redeem the Stars' COC and Center GP interests.

---

[48] DSELP Redemption Motion at 6-7.
[49] *See generally* DSELP Redemption Motion Response.

### 3. Undisputed facts

#### a. The Mavericks' Evidence

[¶ 66]  Despite putting Hockey Club's name in the redemption letter's addressee block, the Mavericks directed their redemption letter to the attention of Messrs. Gaglardi and Alberts.[50]  Mr. Gaglardi ultimately owns both DSELP and, thus, Hockey Club.[51]  He is also the Governor of the Stars' NHL franchise.[52]

[¶ 67]  Mr. Alberts is both companies' CEO and President.[53]  Messrs. Gaglardi, Alberts, and Jim Lites are the directors of DSELP's general partner.[54]

[¶ 68]  Messrs. Gaglardi and Alberts received the letter (or a copy) and promptly discussed its contents with each other.[55]  Upon receiving the letter, Mr. Alberts sent it to NHL Commissioner, Gary Bettman.[56]

[¶ 69]  The day he received the letter, Mr. Alberts met with his entire executive staff:  Matt Bowman (Chief Revenue Officer), Therese Baird (CFO),

---

[50] Appendix in Support of Plaintiffs' 166g and 166a Motions (Mavericks' 166(g) App.) at 6.
[51] Mavericks' 166(g) App. at 94, 96-98.
[52] Mavericks' 166(g) App. at 38.
[53] Mavericks' 166(g) App. at 36-38.
[54] Mavericks' 166(g) App. at 34-35.
[55] Mavericks' 166(g) App. at 60-63, 100.
[56] Mavericks' 166(g) App. at 63.

Lindsay Dowdy (Human Resources EVP), and Dan Stuchal ("who oversees our youth business") and discussed the letter.[57] That meeting was in Mr. Alberts' office in Frisco, Texas.[58] The Stars did not have an office at 2100 Ross Avenue that day.[59]

[¶ 70] Ms. Baird, who is both companies' CFO,[60] received the cash and held it in the single safe that both entities use.[61]

[¶ 71] Hockey Club is a wholly owned DSELP subsidiary.[62] Both companies share the same office space and address at 2601 Avenue of the Stars in Frisco, Texas (which is also the Stars' practice facility).[63] That address is the only address where DSELP receives mail.[64]

[¶ 72] DSELP has no employees[65] and depends on Hockey Club's employees to conduct its business.[66] DSELP does not have a bank account.[67]

---

[57] Mavericks' 166(g) App. at 66.
[58] Mavericks' 166(g) App. at 66.
[59] Mavericks' 166(g) App. at 50.
[60] Mavericks' 166(g) App. at 49.
[61] Mavericks' 166(g) App. at 47-48.
[62] Mavericks' 166(g) App. at 32-33.
[63] Mavericks' 166(g) App. at 36.
[64] Mavericks' 166(g) App. at 50.
[65] Mavericks' 166(g) App. at 35.
[66] *See* Mavericks' 166(g) App. at 136.
[67] Mavericks' 166(g) App. at 39.

Hockey Club paid DSELP's capital calls and received DSELP's partnership distributions.[68]

[¶ 73]  Mr. Alberts did not "make a big distinction" between DSELP and Hockey Club.[69]  At his deposition, Mr. Gaglardi could not distinguish in his mind DSELP from Hockey Club.[70]

### b.  The Stars' Response

[¶ 74]  The Stars did not dispute the facts and supporting evidence discussed in part III(A)(3)(a) above.[71]

[¶ 75]  Instead, they discussed events leading to the parties' contracts, the Arena's initial financing arrangements, and their prior owners' 2011 bankruptcy.[72]

[¶ 76]  They additionally discussed (i) the Texas Legends' leases with the Stars; (ii) the Mavericks' consent to the Stars receiving partnership distributions; (iii) the Mavericks' indirect acceptance of the Stars' rent

---

[68] Mavericks' 166(g) App. at 40-41.
[69] Mavericks' 166(g) App. at 57.
[70] Mavericks' 166(g) App. at 95-96.
[71] *See* DSE Hockey and DSELP's Response to Plaintiffs' 166(g) Motion Regarding Binding Effect of the Summary Judgment Order (Stars' 166(g) Response) at 1-17.
[72] Stars' 166(g) Response at 2-4.

payments due under their COC lease; (iv) the Mavericks' consent to the Stars making partnership capital contributions; and (v) other Stars' lease rights.[73]

[¶ 77] The Stars also posited that they allegedly maintained offices for the hockey team's players, coaches, trainers, and administrative staff at the American Airlines Center in Dallas.[74]

[¶ 78] Finally, the Stars cited evidence that the Mavericks knew before they sent their redemption letter that DSELP was the actual partner in COC and, yet, put Hockey Club's name on the redemption letter.[75]

[¶ 79] However, none of those matters affect whether DSELP, directly or indirectly, received the Mavericks' letter and cash tender.

[¶ 80] The Stars also argued that binding DSELP under the circumstances would violate its due process rights.[76]

---

[73] Stars' 166(g) Response at 4-7.
[74] Stars' 166(g) Response at 3-4. However, that evidence is irrelevant to whether DSELP received the letter and cash tender.
[75] Stars' 166(g) Response at 7-10. To the extent the Stars offered other evidence regarding their response not mentioned here, the court considered that evidence and concluded that it failed to raise a genuine issue of material fact affecting the Mavericks' argument in this section.
[76] Stars' 166(g) Response at 34-35.

### 4. Decision

#### a. Introduction

[¶ 81]  The Mavericks relied on *International Bankers*, 368 S.W.2d at 580, to argue that their redemption letter and accompanying cash tender were effective as to DSELP because its officers and agents received the letter and tender.[77]  The court agrees with the Mavericks because *International Bankers* is binding authority and the facts conclusively establish DSELP's actual knowledge and receipt of the Mavericks' redemption letter and cash tender.[78]

##### i. *International Bankers*

[¶ 82]  *International Bankers* was a derivative suit against certain directors for breaching fiduciary duties.  An issue was when disinterested directors had sufficient knowledge of the breaches to begin the limitations period.  The supreme court held that actual notice to a corporate officer or agent is notice to a corporation where that person, in the scope of his or her duties to the corporation, should and reasonably could communicate that knowledge to the corporation:

---

[77] Plaintiffs' Rule 166(g) Motion Regarding the Binding Effect of the Court's Summary Judgment Order on Dallas Sports & Entertainment, L.P. (Mavericks' 166(g) Motion) at 6-7, 24-26.

[78] *Dallas Sports*, 2026 Tex. Bus. 15, ¶s 46-69.

Plaintiff as a corporation could act only through its agents, and in our opinion notice to a corporation sufficient to activate the statute of limitations is not categorically limited to that acquired by directors in official meetings. The authority cited by plaintiff (3 Fletcher Cyclopedia Corporations, Sec. 793) recognizes the rule that notice to an officer or agent is notice to the corporation in the circumstance where the officer or agent in the line of his duty 'ought, and could reasonably be expected, to act upon or communicate the knowledge to the corporation.' We are clear in the view that it was the duty of the officers and directors of plaintiff to act upon notice, if such they had whether actual or constructive, of that which is charged against the defendants in this suit. The office of a corporation director or officer is more than nominal, and those assuming the duties and responsibilities of such offices are not justified in neglecting every precaution or investigation; it is their minimal duty and responsibility to protect the corporation against acts adverse to the interest of the corporation, whether perpetrated by fellow directors or by strangers to the corporation.

*Id.*

[¶ 83]   The Stars' response did not mention *International Bankers*. Nor did they cite any contrary, let alone overruling, authority. This court, however, cannot ignore the case or its application to the undisputed facts—both as to DSELP's knowledge of the redemption letter and its receipt of the cash tender. That is, the same facts and circumstances that establish DSELP's receipt and knowledge of the letter also establish its receipt of the simultaneous cash tender delivered with the letter.

### ii. DSELP's Knowledge and Receipt

[¶ 84] As discussed in part III(A)(3)(a), the undisputed facts conclusively establish that DSELP's owner, highest ranking corporate executives, and at least two of its general partner's directors received the redemption letter, a copy of it, or discussed it. Not only did the top executives discuss the letter, but the Stars also responded to it a week later.

[¶ 85] And DSELP's CFO, who officed at the address in the letter's addressee block, also admitted to receiving the cash and depositing it in the safe used by both entities.

[¶ 86] Next, Texas elevates substance over form. *See Texas Right to Life v. Van Stean*, 702 S.W.3d 348, 355 (Tex. 2024); *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997). More specifically, Texas considers a situation's economic realities to determine its nature. *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 669 (Tex. 2015) (economic realities determined investment contract's status as a security).

[¶ 87] Here, for the reasons discussed in part III(A)(3)(a) above, the economic realities are that DSELP received actual notice of the Mavericks' redemption letter and the cash tender. Thus, as a matter of law, the Mavericks

established DSELP's actual knowledge and receipt of the redemption letter and cash tender. *International Bankers*, 368 S.W.2d at 580.

### b. The Parties' Additional Arguments

#### i. Alter Ego

[¶ 88] Rather than addressing *International Bankers* and its application to the undisputed facts discussed in part III(A)(3)(a) above, the Stars attempt to argue that DSELP did not receive the tendered funds because, according to them, the Mavericks' argument is an unpled and unproved alter ego argument.[79]

[¶ 89] The court rejects that argument because it misperceives the Mavericks' position. The Mavericks did not argue alter ego. Nor did they need to because they proved that DSELP actually received the letter and cash tender.

[¶ 90] The Mavericks could have put a fictitious name or no name in the addressee block, and it would not have mattered because the right people got the letter and the cash (at the right address). The Mavericks could have handed the letter and the cash to Ms. Baird during a game at the Arena and the result would be the same.

---

[79] Stars' 166(g) Response at 14-17.

[¶ 91]   Nonetheless, the Stars' response at page seventeen also refers to evidence that (i) the two companies have separate "books and records,"[80] (ii) are separate parties to the Stars' City of Dallas Franchise Agreement and the COC Agreement,[81] and (ii) Hockey Club is not DSELP's only subsidiary.[82] The court accepts those facts as true.  But they do not concern whether DSELP received actual notice of (or received) the redemption letter and cash tender.

### ii.  DSELP's Due Process

#### (a) The Stars' Arguments

[¶ 92]   The Stars argue that binding DSELP to the April 2nd Order when the court added DSELP as a party little more than a week before the March 6, 2026, summary judgment hearing deprived DSELP of its due process and due course rights under the federal and state constitutions.[83] *See* U.S. CONST. AMEND. XIV, § 1; TEX. CONST. art. I, § 19.

[¶ 93]   To that end, they cite *Metromedia Rest. Svcs., Inc. v. Strayhorn*, 188 S.W.3d 282, 286-87 (Tex. App.—3rd Dist. 2006, pet. denied) for the

---

[80] *See* Appendix to Stars'  April 24, 2026, Response to Mavericks' Rule 166(g) Motion (Stars' 166(g) Response App.) at 954 (Baird Dep. 11:12-11:20).

[81] *See* Stars' 166(g) Response App. 7-114 (Hockey Club's franchise agreement and DSELP's predecessor's COC and Center GP Agreements).

[82] *See* Stars' 166(g) Response App. 953-54 (Baird Dep. 9:23-10-5) (Hockey Club is a DSELP subsidiary).

[83] Stars' 166(g) Response at 34-35.

premise that Hockey Club and DSELP are separate entities with separate due process rights even if they have identical interests and identical defenses.[84]

[¶ 94]  They then argue that DSELP was not a party to the Mavericks' summary judgment motions when the Mavericks filed them and did not participate in the summary judgment hearing.[85]  Thus, the Stars conclude that the motions and hearing did not afford DSELP a meaningful opportunity to be heard, thus denying DSELP's due process and due course rights.[86]

### (b) The Mavericks' Reply

[¶ 95]  The Mavericks replied that binding DSELP to the April 2nd Order does not violate its due process rights because DSELP (i) has effectively been a party to the case from the outset and (ii) had an opportunity to raise unique arguments but did not do so.[87]

### (c) Decision

[¶ 96]  The court concludes that, under this case's particular facts, DSELP had a fair opportunity to defend itself and its due process and due course rights were not deprived because it (i) had notice of the claims and suit

---

[84] Stars' 166(g) Response at 34-35.
[85] Stars' 166(g) Response at 34-35.
[86] Stars' 166(g) Response at 35.
[87] Plaintiffs' Reply in Support of Rule 166(g) Motion regarding Effect of the Court's Summary Judgment Order on DSELP (Mavericks' DSELP Rule 166(g) Reply) at 14-19.

from the outset; (ii) had an identical financial interest in the outcome as Hockey Club; (iii) and was in privity with Hockey Club such that DSELP would be bound by collateral estoppel had it been sued separately. *See Benson v. Wanda Petroleum Corp.*, 468 S.W.2d 361, 363-64 (Tex. 1971).

[¶ 97] In short, DSELP knew of the Mavericks' claims and their grounds for a year before the Mavericks sued; Mr. Alberts repeatedly testified that Hockey Club was the entity that assumed the Stars' contracts; the Stars' counsel agreed that the then-pending summary judgment materials applied equally to DSELP, which was afforded an opportunity to assert defenses and claims unique to it but failed to do so; and DSELP did not object to the court's February 25th Order Regarding Joinder or move for a continuance.[88]  Under those circumstances, DSELP's due process rights were satisfied.

[¶ 98] "The degree of process that is due in any given situation is measured by a flexible standard that depends on the practical requirements of the circumstances." *Harter v. Harter*, No. 14-23-00340, 2024 WL 5051195, *8 (Tex. App.—14th Dist. Dec. 10, 2024, no pet.).

---

[88] *See* ¶s 3-52 and 67-73 above.

[¶ 99]   Here, relevant factors include whether DSELP knew the facts, was not misled, or was disadvantaged.  *See Sumrak v. Tenneco Oil Co.*, 648 S.W.2d 778, 780 (Tex. App.—2nd Dist. 1983, no writ) (quoting *Continental S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975) (whether suing erroneous entity affected limitations)).

[¶ 100]   Likewise, in the collateral estoppel context, our supreme court discussed the due process aspects of the privity requirements thusly,

> Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy, and, where not so, that, at the least, the presently asserted interest was actually and adequately represented in the prior trial. As to the latter, § 84 of the Restatement of Judgments (1942) states that a person who is not a party but who controls an action is bound by the adjudications of litigated matters as if he were a party where he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of law with reference to the same subject matter or transaction.

*Benson*, 468 S.W.2d at 361, 363-64.

[¶ 101]   Here, DSELP knew about the dispute from the outset, it controlled the defense, its economic interests are identical to Hockey Club's interests, it did not object to the joinder order stating that DSELP would be bound by the then-pending summary judgment motions, it had an opportunity to present arguments specific to it but did not do so, it was represented by the

-34-

same able counsel, it did not explain any prejudice to it, and it did not move for a continuance. Accordingly, its due process and due course arguments fail.[89]

### iii. Remaining Arguments

[¶ 102] The court rejects the Stars' arguments based on the Mavericks' purported knowledge (i) about the Stars' team office location and (ii) that DSELP was the correct party because the fact remains that DSELP received the letter and cash tender. For the same reason, the court need not address the Mavericks' additional agency, ratification, and estoppel arguments.

### c. Conclusion

[¶ 103] The pivotal question is, what difference did it make that the letter's addressee block said Hockey Club instead of DSELP? The Stars offered no reason that the difference mattered. They offered no evidence nor reason that the difference prejudiced DSELP. Accordingly, the court concludes that the company name in the addressee block is immaterial and the court's summary judgment and Rule 166(g) rulings bind DSELP.

---

[89] For these purposes, the court's due course analysis tracks its due process analysis.

**B. Do the court's April 2nd rulings negate the Stars' counterclaim?**

**1. Introduction**

[¶ 104]   Yes, the court's April 2nd ruling that the Mavericks prevail on their declaratory judgment action also negated the Stars' declaratory judgment counterclaim because that counterclaim did not assert unique issues not already implicated by the Mavericks' declaratory judgment action.

**2. The Mavericks' Arguments**

[¶ 105] The Mavericks challenged the Stars' twenty-two-part declaratory judgment counterclaim.[90]   The Mavericks argued that the Stars sought declarations that were the "mirror image" of the issues already raised by the Mavericks' pleadings.[91]   That is, the Mavericks' motion rests on the principle that the Declaratory Judgment Act is not available to settle disputes already before (or decided by) the court.  Indeed, that has long been Texas law:

> The Declaratory Judgment Act is "not available to settle disputes already pending before a court."

*BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (quoting

*Heritage Life v. Heritage Grp. Holding,* 751 S.W.2d 229, 238 (Tex. App.—5th

Dist. 1988, writ denied)).

---

[90] *See generally* Motion for Summary Judgment Dismissing Defendants' Counterclaim (Mavericks' Counterclaim DJ Motion).
[91] *See* Mavericks' Counterclaim DJ Motion at 2.

[¶ 106] From there, the Mavericks argued that the Stars' requested declarations fail if the Mavericks prevailed on their affirmative declaratory judgement claim (which they did).[92]

### 3. The Stars' Arguments

[¶ 107] The Stars responded that the "mirror image rule" does not apply here because they asserted declaratory judgment claims that could have resulted in them recovering greater relief beyond merely refuting the Mavericks' requested relief.[93] They based that argument primarily on their claim that they are entitled to redeem the Mavericks' COC and Center GP interests because the Mavericks allegedly committed their own Relocation Event breach regarding their franchise agreement with Dallas.[94]

### 4. The Mavericks' Reply

[¶ 108] The Mavericks replied that the Stars' "greater relief" argument fails because the April 2nd Order and opinion decided the Mavericks' Relocation Event against the Stars, thereby mooting that claim.[95]

---

[92] Mavericks' Counterclaim DJ Motion at 9.

[93] Hockey Club and DSELP's Response to Plaintiffs' Summary Judgment Regarding Defendants' Counterclaims (Stars' Counterclaim DJ Motion Resp.) at 4-11.

[94] Stars' Counterclaim DJ Motion Resp. at 11-12.

[95] Plaintiffs' Reply in Support of Motion for Summary Judgment Dismissing Defendants' Counterclaim (Mavericks' Counterclaim DJ Motion Reply) at 6-8. *See also Dallas Sports*, 2026 Tex. Bus. 15, ¶s 70-103.

The Mavericks further replied that the April 2nd Order negated the Stars' defensive declaratory judgment claims.[96]

### 5. Decision

[¶ 109]  The Stars' counterclaim did not add any issues, defenses, or affirmative claims that the court's May 20th final judgment did not explicitly or implicitly resolve.  *See Etan Indus., Inc. v. Lehman*, 359 S.W.3d 620, 624-25 (Tex. 2011).  The court's April 2nd Order decided the Mavericks' relocation issue against the Stars, thereby rendering that claim moot:

> Just as the Texas Constitution bars our courts from deciding a case when the plaintiff lacks standing, similarly, a court cannot decide a case that has become moot during the pendency of the litigation.  A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer "live," or if the parties lack a legally cognizable interest in the outcome.  Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests.

*Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012) (footnotes omitted).

[¶ 110] Likewise, the Mavericks' declaratory judgment action subsumed the Stars' requested defensive declarations that the April 2nd Order also mooted.

---

[96] Mavericks' Counterclaim DJ Motion Reply at 8-13.

[¶ 111]   Finally, the Stars correctly cited several cases for the point that the mirror image rule does not necessarily negate a declaratory judgment counterclaim,[97] but those cases mean only that the defendant can still recover their fees under Civil Practice and Remedies Code § 37.009.  *See BHP Petroleum*, 800 S.W.2d at 842.  However, the court decided the attorneys' fees issue on May 11, 2026.[98]  So, that Stars' claim is also moot.

## C. Did the Stars' 2011 bankruptcy bar the Mavericks' claims?

### 1.  Introduction

[¶ 112]   No, the court rejects this defense because the Stars assumed their Location Commitment and Relocation Event terms post-bankruptcy.  So, those terms created a condition subsequent that applied post-bankruptcy.  Because the Stars' post-bankruptcy conduct triggered that condition, the Mavericks could exercise their redemption rights.

### 2.  Discussion

#### a.  The Stars' Arguments

[¶ 113]   The Stars' res judicata argument contends that (i) the Mavericks' claim turns on the Stars' 2003 move from Irving, Texas to Frisco,

---

[97] *See* Stars' Counterclaim DJ Motion Resp. at 6-8.
[98] *See generally Dallas Sports Group, LLC v. DSE Hockey Club, L.P.*, No. 25-BC01B-0049, 2026 Tex. Bus. 24 (1st Div.).

Texas and, thus, (ii) res judicata effects arising from their predecessor's 2011 bankruptcy plan bar the Mavericks' redemption right claims against the current Stars.[99] Although the Stars cite several cases for their argument,[100] they rely mostly on *In re Arriva Pharm., Inc.*, 456 B.R. 419, 426 (Bankr. N.D. Cal. 2011); *In re Ali Props., Inc.*, 334 B.R. 455, 462 (Bankr. D. Kan. 2005); and *In re Cellnet Data Sys., Inc.*, 313 B.R. 604, 608 (Bankr. D. Del. 2004).

### b. The Mavericks' Response

[¶ 114] The Mavericks responded that the court should deny the Stars' Res Judicata Motion for four reasons:

[¶ 115] First, the Mavericks relied primarily on *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex. 1993) and *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1978) to urge that one cannot avoid summary judgment based on an unpled and unproved affirmative defense.[101] Thus, the Stars' bankruptcy-related defenses fail because they did not raise them in response to the Mavericks' First DJ Motion.[102]

---

[99] Defendant's Traditional Motion for Summary Judgment or Alternatively for Legal Ruling Under Rule 166(g) (Stars' Res Judicata MSJ) at 13-20.

[100] Stars' Res Judicata MSJ at 16.

[101] Plaintiffs' Response to Defendants' 166(g) Motion re Bankruptcy Related Affirmative Defenses (Mavericks' Res Judicata Resp.) at 12-17.

[102] Mavericks' Res Judicata Resp. at 12-17.

[¶ 116]   Second, the Mavericks responded that res judicata does not apply to their rights which arose post-confirmation.[103]  They further asserted that res judicata fails because there is no fact-finding that the Stars breached their Location Commitment with Dallas before the confirmation order.  Thus, their claim was not ripe and is not res judicata barred.

[¶ 117]   Third, the Mavericks argued that res judicata fails because the Stars assumed the Location Commitment and Relocation Events clauses, and those clauses created conditions that the Stars triggered post-confirmation.[104]

[¶ 118]   Finally, the Mavericks posited that res judicata is inapplicable because (i) the current Mavericks' owners acquired their COC and Center GP interests before the Stars' bankruptcy cases and (ii) the Stars did not serve those entities with notice of the motion to assign and assume the executory contracts.[105]  Rather, the Stars served notice on Dallas Basketball Limited, which is not a party to the COC and Center GP agreements.[106]

### c.  The Stars' Reply

[¶ 119]   The Stars replied with four points:

---

[103] Mavericks' Res Judicata Resp. at 17-19.
[104] Mavericks' Res Judicata Resp. at 22-26.
[105] Mavericks' Res Judicata Resp. at 26-29.
[106] Mavericks' Res Judicata Resp. at 26-29.

[¶ 120] First, the April 2nd Order does not preclude DSELP from asserting the res judicata defense because it "wasn't a party to the summary judgment motions."[107]

[¶ 121] Second, "the Mavericks' claims rest entirely on pre-bankruptcy conduct—the Stars' 2003 move to Frisco—that the Mavericks themselves pleaded as the basis for the alleged breach."[108] Relatedly, they said they need not prove they breached the franchise agreement's Location Commitment before the bankruptcy court's confirmation order for res judicata to apply.[109]

[¶ 122] Third, "the Mavericks' redemption rights—to the extent they exist—derive entirely from the City of Dallas's contractual position, not from any independent right the Mavericks possess."[110]

[¶ 123] Fourth, "Dallas Basketball, Ltd—the entity controlling the Mavericks basketball team in 2011—received actual notice, and the Mavericks' ownership had actual knowledge of the bankruptcy proceeding."[111]

---

[107] Defendants' Reply in Support of Their Motion for Legal Ruling under Rule 166(g) (Stars' Res Judicata Reply) at 1-3.
[108] Stars' Res Judicata Reply at 1, *see also* at 8-9.
[109] Stars' Res Judicata Reply at 10-12.
[110] Stars' Res Judicata Reply at 1, *see also* at 12-15.
[111] Stars' Res Judicata Reply at 1, *see also* at 15-16.

### d. Decision

#### i. Res Judicata Elements

[¶ 124]   Res judicata requires proof of: "'(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

[¶ 125]   Here, the only relevant element is whether this case is based on the same claims the Stars raised or could have raised in their bankruptcy case. That element is not met because (i) the Stars agreed to perform their Location Commitment to Dallas post-bankruptcy and (ii) whether they so performed could not have been litigated pre-bankruptcy.

#### ii. The Stars assumed, accepted, and are bound by their Dallas franchise agreement and the Arena-related agreements.

[¶ 126]   The Stars concede that their current ownership assumed and agreed to be bound by (i) the Dallas franchise agreement and (ii) the COC and

-43-

Center GP Agreements.[112] It follows that they also agreed to comply with their franchise agreement's Location Commitment to Dallas:

> And it is axiomatic that when an assignee receives a transfer of rights under a contract, the assignee steps into the assignor's shoes for purposes of that contract.

*Clayton Williams Energy, Inc. v. BMT O&G TX., L.P.,* 473 S.W.3d 341, 353 (Tex. App.—8th Dist. 2015, pet. denied). It further follows that they accepted and became bound by the COC and Center GP Agreements' Relocation Event rights and risks should either party to those contracts breach its Location Commitment to Dallas. *Id.*

[¶ 127] The April 2nd Order concludes as a matter of law that (i) the Stars had breached their Location Commitment to Dallas and (ii) a Relocation Event had occurred under the COC and Center GP Agreements when the Mavericks sent their October 25, 2024, redemption letter. *Dallas Sports*, 2026 Tex. Bus. 15, ¶s 46-69, 159-162. As discussed below, those facts defeat the Stars' res judicata defense.[113]

---

[112] Stars' Res Judicata MSJ at 4-7.

[113] This discussion also addresses the Stars' reply argument that "the Mavericks' redemption rights—to the extent they exist—derive entirely from the City of Dallas's contractual position, not from an independent right of the Mavericks possess." Res Judicata Reply at 1.

### iii. The Stars' Relocation Event was a condition subsequent that triggered the Mavericks' redemption right.

[¶ 128]  The Stars argued that "the Mavericks' redemption rights—to the extent they exist—derive entirely from the City of Dallas's contractual position, not from any independent right the Mavericks possess."[114]  The court disagrees because the Stars' breach of their Location Commitment promise *to Dallas* triggered a condition subsequent in their separate Agreements *with the Mavericks*, thereby triggering the Mavericks' redemption rights.

[¶ 129]  A condition subsequent is an event empowering a party to terminate a counter-party's relationship without cause:

> A condition subsequent is "a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, *if he chooses to avail himself of the condition.*"  *E.g.*, *Rincones v. Windberg*, 705 S.W.2d 846, 848 (Tex. App.—Austin 1986, no writ) (citation omitted); *cf.* Restatement (Second) of Contracts § 224 cmt. e (Am. Law Inst. 1981).  A condition subsequent excuses an already binding agreement.  *Rincones*, 705 S.W.2d at 848.

*Community Health Sys. Prof. Svcs. Corp. v. Hansen*, 525 S.W.3d 671, 683 (Tex. 2017) (emphasis added).

[¶ 130]  Stated differently, a condition subsequent is:

---

[114] Res Judicata Reply at 1; *see also* at 12-13.

> A condition that, if it occurs, will bring something else to an end; an event the existence of which, by agreement of the parties, discharges a duty of performance that has arisen.

*Condition subsequent*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[¶ 131]  Here, the COC and Center GP Agreements' Relocation Event clauses made the Stars' (post-confirmation) breach of their Location Commitment promise to Dallas an event that allowed the Mavericks to terminate the Stars' relationships under both contracts (including the right to designate Center GP managers) if it so chose.[115]  *Community Health*, 525 S.W.3d at 683; *Dallas Sports*, 2026 Tex. Bus. 15, ¶s 46-69, 159-162.

### iv. Post-Bankruptcy Conduct

[¶ 132]  The Stars' argued that the Mavericks base their redemption claim on the Stars' 2003, pre-bankruptcy move to Frisco.[116]  They specifically cited paragraphs one and two of the Mavericks' pleadings for the premise that "the Mavericks pleaded that their right to redeem arises from the 2003 move to Frisco by the Stars."[117]

---

[115] Stars' MSJ App. Vol. 1 at 77, 155-56.
[116] Stars' Res Judicata MSJ at 1, 9, 17, 19.
[117] Stars' Res Judicata MSJ at 17.

[¶ 133]  But the court has not found any such allegation in the Mavericks' original or first amended petitions.  More specifically, the court has not found "2003" mentioned in either petition.

[¶ 134]  On the other hand, the Mavericks pled that it is the Stars' failure to maintain the Team's corporate and executive offices in the City of Dallas that supports their redemption right:

> The COC Partnership Agreement and Center GP Agreement provide that in the event of a Stars Relocation Event, the Mavericks may cause COC Partnership and Center GP to purchase and redeem the Stars' entire ownership interest in the COC Partnership and Center GP.  A "Relocation Event" includes the Stars' failure to maintain the City of Dallas as its "principal corporate and executive offices."  *See* [COC and Center GP Agreements §§ 4.8 and 4.5.]  The Mavericks request that the Court declare (a) a "Relocation Event" under the Arena Agreements has occurred, (b) the Mavericks are "Remaining Partners" under the COC Partnership Agreement and the "Remaining Members" under the Center GP Agreement, (c) the Stars are "Relocation Partners" under the COC Partnership Agreement and the Stars are "Relocation Members" under the Center GP Agreement, and (d) the Mavericks therefore have the contractual right to cause the COC Partnership and Center GP to purchase and redeem the Stars' interests in COC Partnership and Center GP.[118]

[¶ 135]  Here, the Stars' 2011 bankruptcy gave the new owners a fresh start, but—by assuming and accepting the Location Commitments' promises

---

[118] Mavericks' First Amended Petition at 29, ¶ 71;Mavericks' OP ¶ 70.

to Dallas and the Relocation Events' conditions subsequent—they still had to maintain their Team's principal corporate and executive office in the City of Dallas until their Location Commitment expired in 2031 or risk losing their interests in COC and Center GP and their rights under those Agreements.

[¶ 136] So, regardless of any forgiveness the 2011 bankruptcy had on the Mavericks' ability to cause the redemptions based on pre-bankruptcy breaches, the Stars' post-bankruptcy Location Commitment breach permitted the Mavericks to pursue their Relocation Event derived redemption rights.

[¶ 137] *TransAmerican Natural Gas Corp. v. Finkelstein* illustrates this point. The plaintiff's contracts with debtor TransAmerican were created before TransAmerican's 1987 Chapter 11 confirmed reorganization plan but the plaintiff's claims concerned royalties earned after the confirmation date. The court rejected TransAmerican's res judicata defense because the plaintiff's claim concerned gas produced and sold after the plan's confirmation date. 933 S.W.2d 591, 596 (Tex. App.—4th Dist. 1996, writ denied).

[¶ 138] Likewise, at a minimum, the Mavericks' declaratory judgment cause of action arose from the Stars' post-2011 plan confirmation failure to

maintain their Team's principal corporate and executive offices in the City of Dallas from that point forward as their franchise agreement required.[119]

### v. The Stars' Cases

[¶ 139]  The Stars' cases do not require a different result.  For example, *In re Cellnet* involved a creditor's attempt to recover from a bankruptcy assignee based on the prior debtor's pre-bankruptcy contract breaches.  The court concluded that the confirmation order barred the creditor's claims because those claims were tied to breaches that were fixed in time to points preceding the bankruptcy instead of post-bankruptcy breaches.  313 B.R. at 608-11.  That is not so here where the Stars had post-bankruptcy performance duties toward Dallas that the Stars breached and those breaches triggered conditions subsequent under different contracts with different parties.

[¶ 140]  Similarly, in *In re Arriva*, the court held that an order regarding a confirmed and effective plan barred claims based on pre-confirmation defaults.  456 B.R. at 424-25.

[¶ 141]  Likewise, in *In re Ali*, the court held that a ground lessor that did not object to a confirmed plan's six-year payout plan for unpaid property

---

[119] Additionally, the COC and Center Agreements' non-waiver clauses arguably preserved the Mavericks' ability to pursue their declaratory judgment cause of action.  *See Dallas Sports*, 2026 Tex. Bus. 15, ¶s 110-143, 176-204.

taxes could not complain that the plan improperly treated the debtor's duty to promptly pay pre-plan property taxes. 334 B.R. at 459-61. However, that court recognized the debtor's continuing post-confirmation duty to abide by the payout plan and the debtor's consequence should it breach that duty. *Id.* Thus, *In re Ali* supports the Mavericks' right to invoke the Stars' post-confirmation conduct to invoke the Mavericks' redemption rights.

[¶ 142] Finally, the Stars' reply relied on *Huck ex. Rel. Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45 (3d Cir.), *cert denied* 520 U.S. 1276 (1997). Huck involved a disappointed shareholder's effort to get a second chance at a claim his company lost on the merits by arguing that additional damages were incurred after the first suit, based on acts that occurred before the first suit, constituted a new cause of action. The Third Circuit affirmed the district court's dismissal of that claim on res judicata grounds. *Id.* at 49-51.

[¶ 143] In that case, a sea plane operator complained about a governmental agency's denial of the operator's proposal to operate airplane ramps. In the first suit, the operator alleged that the agency's rejection of his proposal violated several laws. The operator lost that suit.

[¶ 144] In the second suit, a shareholder asserted the same claims based on the same facts. The district court dismissed that case, finding that

the shareholder's claims "arose out of the same transaction and events that gave rise to the earlier lawsuit, and that the same had been earlier adjudicated." *Id.* at 46. In affirming that judgment, the Third Circuit rejected the shareholder's argument that the agency's continued refusals to grant the operator permission to use the sea ramps were new violations that negated the first trial's res judicata effects because, among other reasons, "the denial of the access to the sea ramps[] is precisely the same conduct challenged in the earlier suit." *Id.* at 49. But that is not the pattern in the present case where (i) the post-bankruptcy Stars' owners affirmatively assumed the continuing, future obligation to the City of Dallas to maintain the Team's principal corporate and executive office in the city of Dallas for the next twenty years following the plan confirmation.

[¶ 145] In short, the 2011 bankruptcy gave the Stars a fresh opportunity to comply with that post-bankruptcy obligation and they ignored that opportunity. Their decision not to move to Dallas post-bankruptcy created a new breach—based on their newly accepted and assumed duty to do so—and triggered a Relocation Event giving the Mavericks their post-bankruptcy ability to exercise their redemption rights.

### vi. The Stars did not preserve their alleged res judicata defense.

[¶ 146]   A party fails to preserve an affirmative defense by not asserting it in response to a summary judgment motion regarding a cause of action to which the defense might apply.  TEX. R. CIV. P. 166a(c)); *McConnell*, 858 S.W.2d at 343; *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79.

[¶ 147]   The Mavericks' December 19, 2025, Motion for Partial Summary Judgment Granting Requested Declaratory Relief (Mavericks' DJ Motion) put at issue the entirety of their requested declaratory relief based on their premise that the Stars breached their Location Commitment to Dallas thereby triggering the Mavericks' COC and Center GP Agreements' Relocation Event redemption rights.[120]

[¶ 148]   Res judicata is an affirmative defense. TEX. R. CIV. P. 94.  Thus, the Stars had to assert it in response to the Mavericks' DJ Motion.  But it is undisputed that they did not do that.[121]  So, the Stars did not preserve their ability to later raise that defense.  *See McConnell*, 858 S.W.2d at 343; *Clear*

---

[120] Mavericks' DJ Motion at *passim*.

[121] *See* DSE Hockey Club, L.P.'s Response to Plaintiffs' Motion for Partial Summary Judgment Granting Requested Declaratory Relief at *passim* (res judicata not raised); DSE Hockey Club, L.P.'s Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment Dismissing Certain Affirmative Defenses at *passim* (res judicata not raised).

*Creek Basin Auth.*, 589 S.W.2d at 678-79; *see also*, *Dallas Sports*, 2026 Tex. Bus. 15, ¶s 205-210 (laches not available because not pled or asserted).

## IV. Remaining Grounds and Arguments

[¶ 149] The court considered and rejected any other grounds or arguments the Stars raised. Conversely, that the court does not mention an argument or ground the Mavericks asserted does not mean the court rejected that argument or ground.

## V. Conclusion

[¶ 150] Accordingly, the court's May 6, 2026, orders concluded that (i) the Mavericks' method applied to DSELP too; (ii) dismissed the Stars' declaratory judgment counterclaims; and (iii) rejected the Stars' res judicata defense.

SIGNED: June 3, 2026

_____
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 115709760
Filing Code Description: No Fee Documents
Filing Description: Opinion Regarding Combined Dispositive Motions
Status as of 6/4/2026 7:53 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laura Lisenbee | | llisenbee@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Chris Bankler | | cbankler@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Charles L.Babcock | | cbabcock@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Pam Collins | | pcollins@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Robert Tobey | | robert@jtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Minoo S.Blaesche | | mblaesche@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Dallas Admin | | dallasadmin@adjtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Elizabeth Pittman | | epittman@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Theron Bentz | | tbentz@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Gabriela Barake | | gbarake@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Sarah Starr | | sstarr@jw.com | 6/3/2026 5:18:17 PM | SENT |
| Ashley Collins | | acollins@adjtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Frank Carroll | | focarroll@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Chad Baruch | | chad@jtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Cathi Trullender | | ctrullender@adjtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Julie Robertson | | jrobertson@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Jacqueline Jaramillo | | jacqueline@jtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Ben Hamel | | bhamel@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Andrew Patterson | | apatterson@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Hugo Acevedo | | hacevedo@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| John David Janicek | | jjanicek@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Lea Ann Del Angel | | ldelangel@jw.com | 6/3/2026 5:18:17 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 115709760
Filing Code Description: No Fee Documents
Filing Description: Opinion Regarding Combined Dispositive Motions
Status as of 6/4/2026 7:53 AM CST

Case Contacts

| Lea Ann Del Angel | | ldelangel@jw.com | 6/3/2026 5:18:17 PM | SENT |
|---|---|---|---|---|
| Sarah Balasny | | sbalasny@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 6/3/2026 5:18:17 PM | SENT |
| Douglas WAlexander | | dalexander@adjtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Kirsten MCastaneda | | kcastaneda@adjtlaw.com | 6/3/2026 5:18:17 PM | SENT |
| Joshua Sandler | | jsandler@winstead.com | 6/3/2026 5:18:17 PM | SENT |
| Max Ward | | mward@winstead.com | 6/3/2026 5:18:17 PM | SENT |